# Megargell *against* The Hazleton Coal Company.

Where an Act of Assembly directs a penalty to be recovered by any person suing for the same, the sum when recovered to be paid one half to the person suing, the other to the treasurer or county commissioners, a common informer may sue in his own name.

Where the practice is on appeal from a justice to go to trial on his transcript, and the justice orders that the penalty be paid one half to the plaintiff and the other half to the county commissioners, this is equivalent to a declaration *qui tam.*

Where a person sues as common informer, an amendment to the declaration that he sues as well for himself as the treasurer of the county ought to be allowed.

ERROR to the Common Pleas of *Northampton* county.

John Megargell against the Hazleton Coal Company. This case was before in this court, and is reported in 4 *Watts & Serg.* 424. It originated before a justice of the peace, and was brought to recover the penalty of fifty dollars, mentioned in the 2d section of the Act of 22d March 1817, entitled "An Act to prevent the making, issuing, reissuing and circulating certain description of notes and tickets in the nature of bank notes, and for other purposes." The justice rendered the following judgment, prout the transcript:—

"And now, Nov. 13, 1840, after due consideration of the case, I render judgment against the corporation, to wit, the defendants, as well as against the president of the said corporation, Samuel Moore, Esq., upon whom the summons was served, for the aforesaid penalty of fifty dollars, and costs, agreeably to the 3d section of the said Act of the 22d March 1817; and the said sum, when recovered, to be paid one half thereof to the plaintiff, who sues for the same, to his own use, and the other half thereof into the hands of the treasurer or county commissioners of the county of Northampton, where the recovery is had for the use thereof."

On the trial of the cause, after the evidence was closed, and before the charge, the plaintiff asked to amend the record and declaration, by adding to the name of John Megargell these words: "who sues as well for himself as the treasurer of Northampton county." The defendants objected, and the court refused the amendment and sealed an exception.

The court below charged the jury as follows:—

This suit is brought to recover a penalty under the Act of the 22d of March 1817. The prohibition in the Act is in these words: "No incorporated body, public officer, association or partnership, or private individual, other than such as have been expressly in-

[Megargell v. The Hazleton Coal Company.]

corporated or established for the purpose of banking, shall make, issue, reissue or circulate any promissory note, ticket, or engagement of credit in the nature of a bank note," &c. The penalty annexed is in the words following: " under the penalty in the case of a public officer, of ten dollars, and in case of a corporation, association or partnership, fifty dollars for each and every note so made, issued, reissued, circulated, paid, or received, to be recovered by *any person suing for the same* before any alderman or justice of the peace," &c. It is enacted in the 4th section that " all sums recovered under this Act shall be one half thereof paid to the person or persons suing for the same, to his or their own use, and the other half into the hands of the treasurer or county commissioners of the county wherein the recovery shall be had, for the use thereof."

So far as relates to the facts, there can be no doubt or difficulty. That the defendant did make and issue the paper which was here given in evidence as the foundation of this suit is, no doubt, well proved. The truth of this fact cannot be questioned, and therefore the counsel for the defendant has rested the case very much upon matters of law.

It is said the plaintiff should have shown the defendant's charter of incorporation; and that inasmuch as he has not, the verdict must be for the defendant. As the case stands, it is not necessary that the charter should be shown. The defendant is sued as an incorporated body; and if it was intended to deny this fact, it should have been pleaded in abatement. This not having been done, its legally incorporated existence is conceded by the pleadings, and therefore need not be proved by the exhibition of the charter.

It is said this paper is not a promissory note, ticket or engagement of credit in the nature of a bank note, within the meaning of this Act of Assembly. If it is not, the penalty claimed has not been incurred. This induces a necessity to ascertain what its true and legitimate character is. It acknowledges a specific sum to be due, and that for value received. It promises to pay this sum, and that to a person named or bearer. It is made payable at a particular place. It is not made payable on demand, but on a distant day, and is to be paid with interest, and therefore it is agreed that it is not in the nature of a bank note. It is conceded that in the two last particulars it wants conformity to a bank note, properly so called. But does not the prohibition embrace in its terms other writings than those that are technically legitimate bank notes in form. Every bank note is a promissory note, and in form nothing more. A ticket or engagement of credit must mean something different from a promissory note, or their introduction would be nugatory. They do mean something different in form from a promissory note, in the nature of a bank note. The argument of the defendant's counsel is, that nothing is pro-

[Megargell v. The Hazleton Coal Company.]

hibited but that which is in form a promissory note. If that argument be adopted, the two last descriptions of transgressions are entirely omitted. He makes but one form of instrument the subject matter of offence. This construction is entirely too restricted to meet the object of the law. Indeed it is too narrow even to fulfil the letter of the statute. A ticket or engagement of credit in the nature of a bank note are very comprehensive terms. To be in the nature of a bank note does not require that the paper should be of the exact form of a bank note in words. It must partake of its nature so far as to be fitted to pass from hand to hand as a circulating medium. This characteristic is, in my judgment, the true criterion. A little reflection will clearly demonstrate this position. A promissory note in the nature of a bank note, in its enlarged and liberal sense, would comprehend any instrument having that form, given by one individual to another for money loaned, or for a debt contracted on the purchase of lands or goods between individuals, though limited to a single transaction in the usual course of business. This was not intended; and, in spirit, the statute does not touch such transactions. This itself teaches us that the language of the Act and the mischief to be prevented must be considered together, in giving an interpretation to this statute. The prohibition does not apply to private and single transactions in private life, in the ordinary and usual course of business, in the purchase and sale of property, and in giving securities for debts. The idea contained in the statute is far different from and beyond this. It is to prevent the making and issuing of paper, circulated and designed to circulate through the community, for its ordinary purposes, as money. This is the sense in which I understand the words employed by our law-makers. This circulation was felt throughout the country as a mischief deeply affecting the interest and property of all. To cut it up by the roots was the object of the Legislature in passing this law. If its prohibitions mean anything, if the terms are not mere empty sounds, they must comprehend the making and issuing of any paper medium, by any unauthorized individual or corporation, for the purpose of a common medium.

What is the character of this paper? What office is it to perform? It purports on its face to be fitted to pass from hand to hand as money. Its very denominations, such as five dollars and lesser sums, makes it convenient and suitable for ordinary circulation. It was made, and issued, and put in circulation, or intended to be put in circulation; no one who looks at the paper itself can doubt this. It is accomplishing the very thing the Legislature intended to prevent. Issuing, as used in this statute, means more than one man's giving his note to another for a debt he owes; so does putting in circulation. They mean substantially the same thing. This note for circulation is of the nature of a bank note. It has this character, which fits it for circulation as

[Megargell v. The Hazleton Coal Company.]

a bank note : it is this character, rather than its particular form in words, that the statute is aimed at. Indeed I understand the statute as forbidding the making and putting in circulation as a bank note, any promissory note, ticket or engagement of credit whatever, by persons who are unauthorized. This is the real and true object of the law. It therefore comes to this : is the proposition to be maintained, that the Legislature designed to prohibit names and forms only, and not things? Is it to be understood that a legislative Act forbidding, by words most appropriate for its description, an evil big with weighty and ruinous mischief, should be evaded by the alteration of a form, or addition of some immaterial thing, or by the mere substitution of another name? If it be so, then any and every important law may at any time be evaded by giving a new form or a new name to an old instrument of mischief. This cannot be so, and is not so.

That which cannot be done directly, cannot be legalized by any change of names or forms, and be thus done indirectly. I have no doubt this particular form was adopted to enable this company to do with impunity that which the law forbids. The law, while the parties are in my hands, is not to be outwitted by any such cunning. This attempt at evasion, if successful, would be a fraud upon the law, which in itself would be a violation of its provisions. Every fraud upon a statute is a violation of such statute. That the law will not tolerate any such transaction, no matter what shape or form may be assumed, has been long and well settled. Therefore, to conclude, I do not entertain a doubt that the making of this paper and putting it in circulation is committing the very evil which the Legislature has prohibited, and against which this penalty is declared.

Can the suit be maintained in the name of Megargell alone? The second section provides for the recovery of the penalty by any person suing for the same. By the 4th section, his right to recover is limited to one-half; the other half is to be paid to the county. When a penal statute expressly gives the whole or a part of the penalty to a common informer, and enables him, generally, to sue for the same, he must not declare *qui tam*, unless where a penalty is given for a contempt. I do not think this statute gives the informer a general right to sue in his own name. He is entitled to but one-half, and the other half is not even to be paid to him. The parties to whom the money is to be paid should appear upon the record. They should appear in all the process, both mesne and final; in the summons as well as the execution. The parties should appear to the suit, and merely mentioning them in the judgment will not do. A payment to this plaintiff alone would not be a good payment. The payment of the one-half to the treasurer is positively directed. This he has no right to receive. Can he alone sue for that which he has no right to receive? I think not. The penalty is not given for any private or individual injury.

VIII.—44

[Megargell v. The Hazleton Coal Company.]

No individual injury has been or can be suggested in the case. The penalty is given for the violation of a public law, irrespective of private wrongs. It is given for the naked transgression of the statute. This violation of statute law is a contempt of the sovereignty of the State. In its head the whole community has suffered. To punish, and not to repair individual loss, this penalty is given. The cases cited by the defendants, more especially those from the New Jersey Reports, fully settle the question that the plaintiff cannot maintain this suit in his own name. For this reason alone you will render a verdict for the defendant. The application to amend is also overruled.

The plaintiff excepted to the charge.

Errors assigned;

1. The court erred in refusing to permit the amendment.

2. In charging the jury that the suit should be *qui tam*, and that it could not be maintained in the name of John Megargell alone.

*Brodhead* for the plaintiff in error.

*Reeder*, contra.

The opinion of the court was delivered by

ROGERS, J.—A common informer may bring an action in his own name, whether the penalty be given to him in whole or in part, and that without any positive direction in the Act imposing the penalty. But in the Act on which this suit is brought, the penalty is to be recovered by any person suing for the same; and in the 4th section, the sum, when recovered, is ordered to be paid, one-half to the person or persons suing for the same, &c., and the other half to the treasurer or county commissioners. Independently, therefore, of the general principle, the Legislature recognise the right of action in the common informer, but direct the use to which it is to be put when recovered. The Act, when fairly viewed, we think, admits of no other construction; and if the point depended alone on the words or the import of the language used by the Legislature, the court erred in ruling the plaintiff out of court. It was intended that the action should be brought on his responsibility, and that the common informer alone, in case of failure, should be answerable for the costs. A common informer has not only the right to sue, but, as is held in *Caswell qui tam* v. *Allen* (10 *Johns.* 118), he may receive and give an acquittance for the money; the statute, as in this State, providing that any person might prosecute the action for the penalty, and that one moiety should belong to him, and the other moiety, when recovered, should be paid into the treasury of the State. The right to receive, as is there held, is an incident to the right to sue; a positive and direct opposition to that assumed by the Court of Common Pleas. The right of the common informer to institute the action in his own name is expressly ruled in *Vandeventer* v. *Van Court* (1 *Penn. N. J. Rep.* 168).

[Megargell v. The Hazleton Coal Company.]

But the court say that when the penalty is given to him and others, he must *declare* specially *qui tam*, that the interest of those who have the right may appear of record. And for the latter reason only, the judgment was reversed. And to this effect is the case of *Butler* v. *The President of the College of Physicians* (*Cro. Car.* 256), and ――――― v. *The Inhabitants of The Hundred* ――――― (*Cro. Car.* 336). That a suit may be brought in the name of both is admitted, for so are the precedents; but that it must is denied on the authority of the cases cited. It may be brought, as is said in *Cro. Car.* 256, in both ways. If brought by the common informer, it is good, if it appears to be *qui tam* on the record; for it is not necessary it should be *qui tam* in the writ; for if the interest be set out in the declaration, it is good; for the only reason it is required is that no doubt may exist as to the persons entitled to the penalty when recovered. And whether this judicially appears is the only thing which creates any doubt in the case in hand. This, be it remembered, was an appeal from a justice; and the practice in Northampton county is to go to trial on the transcript, which is substituted for a declaration. Now, in the transcript it appears that the justice ordered the penalty, when recovered, to be paid, one-half to the plaintiff and the other half to the treasurer or county commissioners. This was equivalent to a declaration *qui tam*, and for this reason good.

Besides, the plaintiff offered to amend by adding to the name of John Megargell these words: "who sues as well for himself as the treasurer of Northampton county." Why this application was refused can only be conjectured; but I presume the amendment was rejected because it was supposed to change the cause of action by adding another party. But this is a mistake, as has been already shown: the proper party is the common informer, and the only effect of amendment is to perfect the record by a designation of the persons to whom the money when recovered is to be paid.

Judgment reversed, and a *venire facias de novo* awarded.