Lawrence MARRA, Sr., Plaintiff,

v.

BURGDORF REALTORS,
INC., Defendant.

Civ. A. No. 89–4717.

United States District Court,
E.D. Pennsylvania.

Dec. 6, 1989.

Gerald M. Barr, Allentown, Pa., for plaintiff.

Phil B. Toran and Jay S. Rothman, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

CAHN, District Judge.

Lawrence Marra, Sr. ("Marra")[1], has filed a complaint alleging that the defendant, Burgdorf Realtors, Inc. ("Burgdorf"), and its agent, Art Morgan, committed fraud and violated portions of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat. Ann. §§ 201–1 to 209–6 (Purdon 1971 & Supp. 1989) ("UTPCPL"), and the Pennsylvania Real Estate Licensing and Registration Act, 63 Pa. Stat. Ann. §§ 455.101–.902 (Purdon Supp.1989) ("RELA"). Burgdorf has moved to dismiss the complaint for failure to state a claim or, in the alternative, for failure to join an indispensable party. For the reasons below, this motion is granted.

---

1. Lawrence Marra, Jr., is also important in this case. He will be referred to as "Marra, Jr."

## I. FACTUAL BACKGROUND

The facts, as alleged in Marra's complaint, are as follows. Marra, a Pennsylvania citizen and resident, has long engaged in the purchase, sale, rental, and development of real property. Complaint, ¶¶ 1, 4. Many of the properties purchased by Marra have been held in trust for members of Marra's family; while they were the title-holders of record, they had executed deeds and other documents to Marra for all such properties. Complaint, ¶¶ 4, 5. All proceeds from the sale of these properties were paid to Marra. Complaint, ¶ 5. Marra averages several sales each month. Complaint, ¶ 6.

In March and April of 1985, Marra listed some properties with Art Morgan, a real estate broker then with Coldwell Banker Real Estate. Complaint, ¶ 8. The arrangement was ended shortly after. Complaint, ¶ 9. Sometime later, Morgan became associated with Burgdorf, a corporation incorporated under New Jersey law with its principal place of business in Cherry Hill, New Jersey. Complaint, ¶¶ 3, 10. As a Burgdorf employee, Morgan proposed to Marra that Marra list certain properties with Burgdorf. Complaint, ¶ 11. Marra declined, advising Morgan that all properties titled in the names of Marra, Jr. and L.M.J., Inc. were in fact owned by Marra and that there was a *lis pendens* on all Lehigh County property titled in the names of Marra, Jr. and L.M.J., Inc. *Id.*

The result is predictable to those who recall *King Lear.*[2] On May 25, 1989, Marra, Jr. telephoned Marra's manager and told him that Morgan had sold two parcels of land titled in Marra, Jr.'s name but in fact owned by Marra. Complaint, ¶ 12. At least one other property owned by Marra is listed for sale by Burgdorf; though Burgdorf has been apprised of Morgan's conduct, it has made no attempt to prevent Morgan from listing or selling any properties owned by Marra. Complaint, ¶¶ 13, 14.

Fortunately for Marra, the American legal system spared him the fearful expedient of, Lear-like, wandering madly across the countryside (though he might, of course, have muttered "How sharper than a serpent's tooth it is/To have a thankless child!").[3] Instead, he sued. The action here names Burgdorf as the sole defendant. In the first count, Marra alleges that Morgan's sale and attempted sale of properties owned by Marra constituted "gross negligence, willful fraudulent activity and reckless disregard of Plaintiff's rights." Complaint, ¶ 16. In the second count, Marra invokes the UTPCPL, averring that Burgdorf's decision to list Marra's properties without Marra's consent was fraudulent and created a likelihood of misunderstanding or confusion, which would violate the statute. Complaint, ¶ 18. Finally, in the third count Marra maintains that the defendant violated several clauses of section 455.604 of RELA. First, Marra alleges that Morgan, Burgdorf's agent, made "substantial misrepresentations as to the ownership of property." Second, Morgan allegedly made "a false promise of a character likely to influence, p[e]rsuade or induce another person to enter into a contract or agreement when it could not or did not intend or was not able to keep such promise." Third, Morgan pursued "a continued and flagrant course of misrepresentation or ma[de] up false promises through a salesperson." Fourth, Morgan made "misleading and untruthful advertising." Fifth, Morgan placed "a 'For Sale' sign on a property without the written consent of the owner or his authorized agent." Complaint, ¶ 21. Moreover, Marra alleges that Burgdorf failed "to exercise adequate supervision over the activities of their licensed salespersons or associated brokers[,] namely Art Morgan." Complaint,

---

**2.** In *Lear,* it will be remembered, the King declared:

> Know that we have divided
> In three our kingdom, and 'tis our fast intent
> To shake all cares and business from our age
> Conferring them upon younger strengths ...

W. Shakespeare, *King Lear* act I, scene I, lines 39–42, in *Complete Works* 908, 908 (W. Craig ed. 1904). It is only fair to add, though, that Marra appears to have wished to shake taxes, rather than burdens, from his age.

**3.** W. Shakespeare, *King Lear* act I, scene IV, lines 312–13, in *Complete Works* 908, 916 (W. Craig ed. 1904).

¶ 22.[4] This court has jurisdiction under 28 U.S.C. § 1332.

## II. DISCUSSION

### A. *Failure to Join an Indispensable Party*

Burgdorf argues that Marra, Jr. is an indispensable party to these proceedings because adjudication of this case would necessarily prejudice him, while dismissal would not deny Marra remedies. Since Marra, Jr. is concededly a Pennsylvanian, joinder would destroy diversity. Accordingly, it argues, all counts should be dismissed. This court substantially agrees with Burgdorf, though Marra, Jr. is dispensable from part of Count III.

Fed.R.Civ.P. 12(b)(7) makes failure to join a party under Rule 19 a basis for a motion to dismiss. Rule 19, in turn, sets up a two-part test. *See, e.g., Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1053–54 (3d Cir.1988); *Bonar, Inc. v. Schottland*, 631 F.Supp. 990, 998–99 (E.D.Pa.1986).[5] First, under Rule 19(a), the court must determine whether the person in question should be joined. The standard is set out in the rule:

> A person ... shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

If the person must be joined but cannot be made a party, then the second part of the test, found in Rule 19(b), must be applied. *Field v. Volkswagenwerk AG*, 626 F.2d 293, 300 (3d Cir.1980). Under it, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). The rule lists four factors to consider.

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b). In deciding this motion, the court is, as in Rule 12(b)(6) motions, to consider all well-pled allegations true. *Clements v. Holiday Inns, Inc.*, 105 F.R.D. 467 (E.D.Pa.1984).

#### 1. Rule 19(a)

The first prong of the Rule 19 test requires that this court determine whether, as Burgdorf argues, Lawrence Marra, Jr. is an indispensable party. Burgdorf does not argue that Marra, Jr. is indispensable within the ambit of Rule 19(a)(1); prudently, because Marra, Jr. is not. Marra claims monetary damages arising from various actions of Morgan and Burgdorf. While these might have been instigated by Marra, Jr., who presumably supplied the nameless purchaser of the land in question with what appeared to be good title, Marra claims nothing from Burgdorf that arises directly from any action by Marra, Jr.

---

**4.** Burgdorf invites this court to take judicial notice of litigation in the Courts of Common Pleas of Northampton, Monroe, York, Carbon, Lehigh, and Luzerne Counties between Marra and Marra, Jr. concerning the ownership of the real property in question here. This court accepts Burgdorf's invitation.

**5.** Joinder determinations in diversity suits are made under federal law. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 n. 22, 88 S.Ct. 733, 746 n. 22, 19 L.Ed.2d 936 (1968); *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1011 (3d Cir.1987).

However, Rule 19(a)(2) poses quite a different problem. The rule is intended to ensure that all interested parties have both a chance to affect the outcome of an action and an opportunity to benefit from its finality. *Rainbow Trucking, Inc. v. Ennia Ins. Co.*, 500 F.Supp. 96, 98 (E.D.Pa.1980). As applied here, the central query is whether it is necessary to determine whether Marra or Marra, Jr. had clear title to the properties in question. If it is, then Marra, Jr. is an indispensable party for that count or part of a count. Under Rule 19(a)(2)(i), Marra, Jr. would be severely prejudiced were this court to rule in Marra's favor without Marra, Jr.'s inclusion. In so doing, this court would have resolved the very issue being litigated in several state court actions. Naturally, there would be no *res judicata* effect were Marra, Jr. not a party. However, the question under Rule 19(a)(2)(i) is whether such an action may "as a practical matter impair or impede the person's ability to protect that interest." As a practical matter, a decision of this court, though only of persuasive value, would provide support in other litigation for whatever position it espoused. *Provident Tradesmens Bank*, 390 U.S. at 110, 88 S.Ct. at 738; *Vasser v. Shilling*, 93 F.R.D. 146, 150 (M.D.La.1982), *aff'd mem.*, 696 F.2d 994 (5th Cir.1985). Certainly any future federal litigation would be heavily influenced by it. As the Court of Appeals for the Ninth Circuit observed, "Rule 19 speaks to *possible* harm, not only to certain harm." *Aguilar v. Los Angeles County*, 751 F.2d 1089, 1094 (9th Cir.1985); *see also McShan v. Sherrill*, 283 F.2d 462, 463–64 (9th Cir.1960) (for title disputes, all interested parties must be joined); F. James & G. Hazard, *Civil Procedure* § 10.12, at 534 (3d ed. 1985) (nonparty claimants to land should be joined in title disputes). Therefore, Rule 19(a)(2)(i) requires that Marra, Jr. be considered indispensable for any count in which title determination is necessary.

This court must thus examine the elements of each cause of action presented by Marra to determine whether Marra, Jr. is indispensable as to them and thus whether this court needs to pursue the second prong of the test.

### a. Count I: Fraud, Deceit, and Negligent Misrepresentation

■ Marra's claims in Count I for "gross negligence, willful fraudulent activity and reckless disregard of Plaintiff's rights" amount to claims for fraud, deceit, and negligent misrepresentation. The elements of fraud and deceit actions are (1) a misrepresentation, (2) uttered by the defendant (3) with intent that the recipient act on it, (4) resulting in justifiable reliance by the recipient and (5) damages therefrom. *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, —— Pa.Super. ——, 564 A.2d 919, 927 (1989); *Woodward v. Dietrich*, 378 Pa.Super. 111, 124, 548 A.2d 301, 307 (1988).[6] By definition, then, fraud and deceit require that there be a misrepresentation. If Marra, Jr. is the rightful titleholder, then Morgan and Burgdorf acted properly in selling or listing the properties in question. They would have made no misrepresentations. Since it is necessary to determine who owned the properties in question at the times in question, Marra, Jr. is an indispensable party for the fraud and deceit claims.

In Pennsylvania, which follows the Restatement (Second) of Torts, the elements of negligent misrepresentation are stated as follows:

> One who, in the course of his business ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Woodward*, 378 Pa.Super. at 125, 548 A.2d at 308; Restatement (Second) of Torts § 552 (1977). Again, the information supplied must be *false* for the plaintiff to

---

**6.** Burgdorf, as principal, is liable for any misrepresentations, whether fraudulent or negligent, made by Morgan, its agent. *Aiello v. Ed Saxe Real Estate, Inc.*, 508 Pa. 553, 499 A.2d 282 (1985); *Bolus v. United Penn Bank*, 363 Pa.Super. 247, 525 A.2d 1215 (1987).

maintain a cause of action. Marra, Jr.'s ownership must thus be litigated, and so he is an indispensable party for this as well. All of Count I is therefore subject to Rule 19's strictures.

### b. Count II: UTPCPL

■ Here Marra alleges that Burgdorf "created a likelihood of confusion or of misunderstanding" and acted fraudulently by allowing Morgan to list properties belonging to Marra without Marra's consent. Complaint, ¶ 18. The corresponding statutory sections are 73 Pa. Stat. Ann. §§ 201–2(4)(iii), (v) (Purdon Supp.1989), which proscribe "[c]ausing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another" and "[r]epresenting that goods or services have sponsorship [or] approval ... that they do not have ..." The cases state that these sections may be violated both by misrepresenting the truth and by withholding it. *See, e.g., Commonwealth v. Society of the 28th Div.*, 113 Pa.Commw. 456, 463–64, 538 A.2d 76, 79–80 (1987) (misrepresentations); *Commonwealth v. Tolleson*, 14 Pa.Commw. 72, 124, 321 A.2d 664, 693 (1974), *aff'd*, 462 Pa. 193, 340 A.2d 428 (1975) (misrepresentations and withholdings).

Here, the misrepresentations or inapt silences necessarily pertain to Marra's ownership of the properties. Whether Morgan stated that the property belonged to Marra, that it belonged to Marra, Jr., that the buyer didn't need Marra's approval, or that Marra's approval had already been secured are violations of the statute only if they are inaccurate. Only the last arguably does not require that the title be adjudicated. Even there, though, the misrepresentation would only be material if Marra owned the property. Consequently, here, too, Marra, Jr. is an indispensable party.

### c. Count III: RELA

■ Finally, here Marra makes several claims, summarized above, which fall under 63 Pa. Stat. Ann. §§ 455.604(a)(1), (2), (3), (4), & (8) (Purdon Supp.1989). Of these, all but the last require that this court resolve the title dispute as a predicate to ruling for the plaintiff. These claims, contained in paragraph twenty-one of the complaint, rest upon alleged misrepresentations as to the ownership of property, whether stated in contractual negotiations, advertising, sales pitches, or lawn signs. As under the other counts, the representation made is only false if Marra is the rightful titleholder. Marra, Jr. is thus indispensable for all claims made in paragraph twenty-one.

■ Paragraph twenty-two, however, states a very different claim. There Marra alleges that Burgdorf failed to exercise adequate supervision over Morgan. This, if true, would violate 63 Pa. Stat. Ann. § 455.604(a)(16) (Purdon Supp.1989). It might be possible to make out a claim that Burgdorf would violate this clause if it allowed Morgan to make representations about the title of properties with an inadequate basis for his claims. To borrow from another area of torts, Burgdorf might be said to act with reckless indifference. This allegation could be supported without adjudicating the title dispute, as the truth of the representation is not the root of the charge. Rather, Burgdorf's alleged indifference is.

In this procedural posture, it is not necessary for this court to give the details of any such claim, particularly in light of the absence of pertinent Pennsylvania caselaw. It is enough to observe that paragraph twenty-two of the complaint sets out a claim for which Marra, Jr. is not an indispensable party. However, Marra, Jr. is indispensable for all other claims made under the plaintiff's complaint.

### 2. Rule 19(b)

■ This court is obliged to apply the second prong of the test because Marra, Jr. is a citizen of and resides in Pennsylvania. To join him as a defendant would thus create incomplete diversity, which is fatal under 28 U.S.C. § 1332. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) (Marshall, C.J.); *Trent Realty Assocs. v. First Fed. Sav. and Loan Ass'n*, 657 F.2d 29, 36 (3d Cir.1981). To do so, this court shall consider each of the factors laid out in this section.

The first, to what extent a judgment rendered in Marra, Jr.'s absence might prejudice him or others, weighs in favor of inclusion. As discussed above, the pending state litigation might well be influenced by any title determination made here, even if it would not bind Marra, Jr. through fact preclusion. *Vasser*, 93 F.R.D. at 150; *see also Fortuin v. Milhorat*, 683 F.Supp. 1, 3–4 (D.D.C.1988) (quieting title). Moreover, as the advisory notes point out, it is not only the absentee who must be considered. Marra *would* be bound by any determination of this court, and so collateral estoppel can only work to his detriment in any pending litigation. Fed.R. Civ.P. 19 notes on amended rule; *see also Bonar, Inc. v. Schottland*, 631 F.Supp. 990, 1000 (E.D.Pa.1986). For both reasons, this factor points toward joinder.

The second factor considers whether the prejudice might be lessened or avoided by shaping the judgment or relief appropriately. This would be difficult. The harm here lies, not in the relief, but in the elements of the causes of action themselves. This court can thus do nothing itself to avoid prejudice. The only way to bring Marra, Jr. into the action would be if Burgdorf were to do so by defensive interpleader, as suggested in the advisory committee notes to the amended rule. Burgdorf might wish to; it is possible that Marra, Jr. lied to Morgan, thus setting up Marra, Jr. as a possible third-party defendant. Burgdorf has shown no signs of seeking to implead Marra, Jr., though, and this court cannot compel Burgdorf to implead him. The unfavorable result of the first factor therefore cannot be mitigated by either this court or Marra.

Factor three asks whether a judgment in Marra, Jr.'s absence will be adequate. This court agrees with Marra that it will. The relief sought is only money damages, and the complaint makes no equitable claims that would either give Marra an unenforceable judgment or Burgdorf an unmeetable penalty. Again, Burgdorf could have impleaded Marra, Jr. if it had worried about incurring liabilities that should properly go to Marra, Jr.; since it did not, it would be wholly liable. This factor thus supports Marra, Jr.'s dispensability.

The final factor asks whether the plaintiff will have an adequate forum if this action is dismissed. This interest would count greatly if no such forum were available. *Provident Tradesmens Bank*, 390 U.S. at 109, 88 S.Ct. at 737. However, Pennsylvania courts are admirably equipped to resolve disputes over title and claims construing Pennsylvania tort law and statutory law; indeed, since *Erie*, state courts are by definition superior in resolving state law issues. *See, e.g., Steel Valley Auth.*, 809 F.2d at 1015; *Bonar*, 631 F.Supp. at 1000. State court adjudication is especially appropriate when a question of the law of real property is before the court, as such questions are fundamental concerns of state courts, not federal courts. *See, e.g., Steel Valley Auth.*, 809 F.2d at 1015; *Burger King Corp. v. American Nat'l Bank & Trust Co.*, 119 F.R.D. 672, 680 (N.D.Ill.1988); *Fortuin*, 683 F.Supp. at 4 (state court "perhaps a superior forum"); *Republic Realty Mortgage Corp. v. Eagson Corp.*, 68 F.R.D. 218, 222 (E.D.Pa. 1975). Furthermore, it is possible that these claims could be filed as amendments to actions pending against Marra, Jr., which would increase the efficiency of the legal process. In general, it is best to adjudicate whole disputes whenever possible. *Provident Tradesmens Bank*, 390 U.S. at 111, 88 S.Ct. at 738. This factor thus does not block joinder, and even encourages it slightly.

In sum, then, two factors weigh strongly in favor of joinder, one weighs against, and one, the fourth, is neutral or slightly for. The balance is clearly for joinder, and this court so decides. As a result, Marra, Jr. is joined as an indispensable party to all claims save that in paragraph twenty-two in Count III, and all those claims must be dismissed because of incomplete diversity.

## B. *Failure to State a Claim*

Under Fed.R.Civ.P. 12(b)(6), "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that

can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff could prove any set of facts in support of his claim that would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Given the result under Rule 12(b)(7), there is little need to discuss counts I, II, and most of III under this heading. Nevertheless, for the sake of completeness and, in part, as alternative support for its dismissal, this court will consider Burgdorf's motion for each of the counts. Most pertinently here, this court finds that Count III should be dismissed under Rule 12(b)(6) because the statute on which it is based does not allow a private cause of action. Counts I and II are deficient as pled, but amendment could enable them to survive dismissal. Normally, this court would permit amendment before dismissal; since the counts are fatally infirm otherwise, however, that would be unnecessary here. Since Rule 15(a) allows amendment as a matter of right, though, Marra may do so, consistent with the law of the case.

### 1. Fraud

As discussed earlier, Marra claims that Burgdorf committed fraud and negligent misrepresentation. Complaint, ¶ 16. These claims are infirm because Marra is not the proper party to raise them. They must therefore be dismissed under Rule 12(b)(6).

To maintain an action of fraud or deceit, one needs to be able to prove, among other things, that the defendant intended that the plaintiff act upon the misrepresentation and that the defendant justifiably did so. *New York State Elec. & Gas Corp.,* 564 A.2d at 927; *Woodward,* 378 Pa.Super. at 124, 548 A.2d at 307; Restatement (Second) of Torts § 525 (1977). This standard would, if Marra's allegations are true, support a claim against Burgdorf by the name-

less purchaser of the property. It might also support a claim by Burgdorf against Marra, Jr., should there be damages flowing from the misrepresentation. However, Marra's factual predicate does not show how any statement of Morgan was either directed toward Marra or relied upon by Marra. Certainly Morgan could not misrepresent the state of title to Marra in a way that would induce justifiable reliance. At most—and this is purely speculative—Morgan might have stated that he would not list the properties. Such a representation could induce reliance. But Marra nowhere pleads that he was prejudiced by such reliance, and so even this claim would have to be dismissed. *Klemow v. Time, Inc.,* 466 Pa. 189, 352 A.2d 12 (1976).

The same problems beset Marra's claim for negligent misrepresentation. Here, too, one of the elements is justifiable reliance upon the misrepresentation. *Woodward,* 378 Pa.Super. at 125, 548 A.2d at 308; Restatement (Second) of Torts § 552 (1977). The analysis above applies here. He has not laid out any statement of Morgan upon which he justifiably relied. Moreover, since Marra has not pled injury caused by reliance, save in the most conclusory way, he has not carried his pleading burden and thus cannot maintain, on the basis of this complaint, a cause of action for negligent misrepresentation.

This lack of particularity is especially troublesome because Fed.R.Civ.P. 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Even under this Circuit's generous pleading rules, it is necessary to plead in enough detail to put the defendant on notice of the precise misconduct with which it is charged. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984); *Philadelphia TMC, Inc. v. AT & T Information Sys., Inc.,* 651 F.Supp. 169, 174 (E.D.Pa.1986). Marra has not done this, because he pleads only that there was some misrepresentation pertaining to title. There is no clue given as to context, and none as to what, if any, statement was made to Marra. Such pleading cannot support a cause of action. For ei-

ther reason, then, Count I is dismissed for failure to state a claim upon which relief may be granted.

2. Pennsylvania Unfair Trade Practices and Consumer Protection Law

■ In paragraphs seventeen through nineteen of his complaint, Marra pleads that Burgdorf violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat. Ann. §§ 201–1 to 209–6 (Purdon 1971 & Supp.1989), when it allowed Morgan to list for sale properties belonging to Marra, thus creating a likelihood of confusion or misunderstanding. Such a claim is recognized in the statute. 73 Pa.Stat. Ann. §§ 201–2(4)(iii), 201–3 (Purdon Supp.1989).[7] Moreover, the sale of real property may fall within the scope of the statute. *Gabriel v. O'Hara,* 368 Pa.Super. 383, 534 A.2d 488 (1987) (sale of residential property); *see also In re Andrews,* 78 B.R. 78, 81–83 (Bankr.E.D.Pa.1987) (residential mortgage loan transaction included); *Commonwealth ex rel. Creamer v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812 (1974) (leasing of residential real estate included).

However, the statutory provision for a private cause of action does not grant Marra standing, at least as he has pled his case. Section 201–9.2(a) states that

[a]ny person who leases or purchases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by ... this act, may bring a private action ...

73 Pa.Stat. Ann. § 201–9.2(a) (Purdon Supp.1989). The private cause of action is hence limited to lessors or purchasers whose lease or purchase is tainted by unfair trade practices. It is not clear from the pleadings whether Marra originally bought the properties in question "for per-

sonal, family or household" use, a requirement under the statute. *See Wright v. North Am. Life Assurance Co.,* 372 Pa.Super. 272, 280, 539 A.2d 434, 438 (1988); *see also Advanta Leasing Corp. v. New England Wholesale Seafood, Inc.,* No. 88–7741, slip op. at 9, 1989 WL 60484 (E.D.Pa. June 7, 1989); *American Standard Life and Accident Ins. Co. v. U.R.L., Inc.,* 701 F.Supp. 527, 538 (M.D.Pa.1988); *Waldo v. North Am. Van Lines, Inc.,* 669 F.Supp. 722, 727 (W.D.Pa.1987).

The complaint alleges that blank notarized deeds were kept in Marra's office "to permit the orderly transaction of business and the conveyance of properties sold[,] which average several sales each month." Complaint, ¶ 6. It also alleges that the plaintiff is engaged "in the purchase, sale, rental and development of real property." Complaint, ¶ 4. These allegations indicate strongly that Marra dealt in real estate as a business and that the property in question here was purchased as part of that enterprise. Were that so, this claim would properly be dismissed under Rule 12(b)(6). In any event, since Marra failed to plead that the properties in question were intended for personal, family, or household use, this court could dismiss this action because the pleading was inadequate.[8]

3. Pennsylvania Real Estate Licensing and Registration Act

■ Count III of Marra's complaint invokes several clauses of section 455.604 of RELA. The allegations that Morgan, Burgdorf's agent, made "substantial misrepresentations as to the ownership of property" would fall under section 455.-604(a)(1). Morgan's alleged "false promise of a character likely to influence, p[e]rsuade or induce another person to enter into a contract or agreement when it could not or did not intend or was not able to keep such promise" essentially recites section 455.604(a)(2). If Morgan pursued

---

7. In addition, the facts would seem to support a claim under section 201–2(4)(v) ("Representing that goods or services have sponsorship [or] approval ... that they do not have ...").

8. Since the only named property that was listed but unsold is Marra's office, this claim can be, and is, dismissed because the complaint states on its face that the property is *not* devoted to personal, family, or household use. Complaint, ¶ 13.

"a continued and flagrant course of misrepresentation or ma[de] up false promises through a salesperson," he would violate section 455.604(a)(3). The claim of "misleading and untruthful advertising" recites section 455.604(a)(4). If, as alleged, Morgan placed "a 'For Sale' sign on a property without the written consent of the owner or his authorized agent," his actions would be covered by section 455.604(a)(8). Complaint, ¶ 21. Marra also alleges that Burgdorf failed "to exercise adequate supervision over the activities of their licensed salespersons or associated brokers[,] namely Art Morgan," which falls under section 455.604(a)(16). Complaint, ¶ 22. This last is the only claim that survives Rule 12(b)(7) analysis.

### a. Explicit Cause of Action

These claims may be true. However, the statute under which they are made does not permit a private cause of action. Section 455.604(a), which prohibits the types of actions alleged above, merely grants the State Real Estate Commission the authority to investigate complaints, hold hearings, and impose penalties. It does not set out the basis for private relief; instead, it provides for citizen complaints to the State Real Estate Commission.[9] *See also* 1 Pa. Legis.J.—Sen. 669 (July 2, 1979) (statement of Sen. Schaefer) (sponsor states that bill adds "new flexibility in penalties that the *commission* can issue") (emphasis added); Comment, *Pennsylvania Real Estate Licensing Act of 1980*, 54 Temp. L.Q. 806, 815 (commission enforces statute). Even the penalties outlined in the statute only allow fines of up to $1,000, rather than the "amount in excess of $50,000" demanded by the plaintiff. 63 Pa. Stat. Ann. §§ 455.-

305, .604(a) (Purdon Supp.1989); Complaint, ¶ 23.

This is not the only section of RELA that compels this conclusion. Section 455.305, which is the default provision for civil penalties, provides that "the *commission* ... may levy a civil penalty of up to $1,000 ... only after affording the accused party the opportunity for a hearing ..." 63 Pa.Stat. Ann. § 455.305 (Purdon 1989) (emphasis added). This provision does not encompass a private civil remedy; in its stress upon hearings, it makes clear that the civil wrongs set out by the statute are to be redressed by administrative proceedings alone. The administration and enforcement section of RELA also rests enforcement in the commission. It reads, in part:

> The commission shall have the power ... to administer and enforce the laws of the Commonwealth relating to: (1) Those activities involving real estate for which licensing is required under this act and to instruct and require its agents to bring prosecutions for unauthorized and unlawful practice ...

63 Pa. Stat. Ann. § 455.406 (Purdon Supp. 1989). While this does not explicitly deny citizens a right of action, it certainly does not contemplate one. The plainest reading is again to vest the commission with the sole powers of enforcement.

The plaintiff cites no provisions of the statute that undercut this conclusion. Marra points to section 455.302, entitled "Civil suits," as the basis for citizen enforcement. The section does not support this interpretation. It states, in pertinent part, that

> [n]o action or suit shall be instituted, nor recovery be had, in any court of this Commonwealth by any person for compensation [f]or [10] any act done or service

---

9. The section reads, in pertinent part:

> The commission may upon its own motion, and shall promptly upon the verified complaint in writing of any person setting forth a complaint under this section, ascertain the facts and, if warranted, hold a hearing for the suspension or revocation of a license or registration certificate or for the imposition of fines not exceeding $1,000, or both.

63 Pa.Stat. Ann. § 455.604(a) (Purdon Supp. 1989).

10. The version of the statute set forth at 63 Pa.Stat. Ann. § 455.302 (Purdon Supp.1989) reads "or." However, the official statute and its predecessor read "for" here. Act of Feb. 19, § 302, 1980 Pa.Laws 15, 18; 63 Pa.Stat. Ann. § 446 (Purdon 1968) (repealed 1980). Since the statute is ungrammatical and meaningless using "or," and since all evidence points to "for" as the proper reading, this court shall interpolate the "f." *Cf.* 1 Pa.Cons.Stat. Ann. § 1923 (Purdon Supp.1989) (grammatical and minor lexical additions needed to interpret statute appropriate).

rendered, the doing or rendering of which is prohibited under the provisions of this act by a person other than a licensed broker ... unless such person was duly licensed and registered hereunder as broker ... at the time of offering to perform such act or service ...

63 Pa. Stat. Ann. § 455.302 (Purdon Supp. 1989). On its face, it appears to bar unlicensed dealers in real estate from suing for their fees. There are no Pennsylvania cases construing this section, though a recent Court of Appeals decision reads it thus. *Shannon & Luchs Co. v. Mellon Bank,* 868 F.2d 577, 580 (3d Cir.1989). However, this section's predecessor, 63 Pa. Stat. Ann. § 446 (Purdon 1968), is worded almost identically. The courts that interpreted it read it to preclude any recovery of a commission by an unlicensed broker. *See, e.g., Verona v. Schenley Farms Co.,* 312 Pa. 57, 167 A. 317 (1933); *Kreider v. Kleinfelter,* 314 Pa.Super. 571, 461 A.2d 304 (1983); *Burke v. Israel,* 264 Pa.Super. 286, 399 A.2d 779 (1979). This section is thus irrelevant to Marra's claim. There is thus no explicit cause of action under the statute.

### b. Implied Cause of Action

Since the statute contains no explicit private right of action, Marra can only prosecute a claim under it if this court creates an implied cause of action or if this court creates a *qui tam* provision. Neither would be appropriate. Normally, common law causes of action are not barred merely because the legislature has set up an alternative remedial scheme. 1 Pa.Cons.Stat. Ann. § 1929 (Purdon Supp.1989); *see also Pekular v. Eich,* 355 Pa.Super. 276, 282–84, 513 A.2d 427, 430–31 (1986) (Unfair Insurance Practices Act no bar to fraud claim). Marra may thus pursue fraud and negligent misrepresentation claims, for example, insofar as they are applicable, in

courts of competent jurisdiction even though there exists a regulatory statute. At most, though, this continues *common law* actions; it does not create statutory ones.

The Pennsylvania courts have not set forth any clear rules on how one determines whether a private cause of action exists. Accordingly, this court shall employ the principles espoused in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which govern federal courts, on the assumption that a Pennsylvania judge faced with the same problem would act similarly. *Cf., e.g., Holter v. Moore & Co.,* 681 P.2d 962 (Colo.App.1983) (applying *Cort* to state law question); *Sawyer Realty Group, Inc. v. Jarvis Corp.,* 89 Ill.2d 379, 59 Ill.Dec. 905, 432 N.E.2d 849 (1982) (same); *Seeman v. Liberty Mut. Ins. Co.,* 322 N.W.2d 35 (Iowa 1982) (same); *Jenkins v. J.C. Penney Cas. Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981) (same).

Of the four *Cort* factors, three are relevant here. First, the court must ask whether the plaintiff is " 'one of the class for whose *especial* benefit the statute was enacted.' " *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088 (quoting *Texas & P. Ry. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916)) (emphasis in original). The second factor is whether "there is any indication of legislative intent, explicit or implicit, either to create such a right or to deny one." *Id.* Third, the court must determine whether it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff." *Id.*[11]

The first *Cort* factor is equivocal. As the Commonwealth Court has observed, "[a] principal purpose of the [Real Estate Licensing and Registration] Act is to protect buyers and sellers of real estate ... from abuse by persons engaged in the busi-

---

**11.** The fourth is whether the cause of action is traditionally left to state law, making a federal implied cause of action an intrusion upon state concerns. *Cort,* 422 U.S. at 78, 95 S.Ct. at 2087. This cannot apply to state courts, though some state courts that have adopted *Cort*'s factors have made the third into whether the cause of action is traditionally federal or, through legis-

lative action, plainly administrative. *See, e.g., Seeman,* 322 N.W.2d at 40; *Jenkins,* 280 S.E.2d at 254. Such changes are inappropriate. The fourth *Cort* factor rests upon concerns about federalism, so it is not applicable here; simply inverting the state and federal actors would ignore the rationale for the factor, inherent in, among other things, the Tenth Amendment.

ness." *Kalins v. Commonwealth,* 92 Pa. Commw. 569, 577, 500 A.2d 200, 203 (1985). Marra is neither a buyer nor a seller, so the statute is perhaps not primarily directed to him or those like him. Furthermore, the legislature has made clear that penal statutes are to be strictly construed. 1 Pa. Cons.Stat. Ann. § 1928(b)(1) (Purdon Supp. 1989); *see also Leach v. State Real Estate Comm'n,* 25 Pa.Commw. 474, 360 A.2d 269 (1976) (predecessor to current statute penal and to be construed strictly). At the same time, Burgdorf's alleged conduct would seem to be proscribed by the statute, and Marra might fairly be termed a potential, or, perhaps, an unwilling, seller. The first *Cort* test thus permits this court to conclude that Marra, though not among the principal beneficiaries of the Act, at least stands within the penumbra of the Act's radiations.

The second factor, however, comes out strongly against Marra for the reasons discussed above. Not only is there no evidence that the legislature intended to create a private cause of action, there is substantial reason to believe that it intended that none exist. This factor, then, considerably outweighs the first. The third *Cort* factor, consistency with the underlying legislative purpose, also cuts against Marra. Much of the reason behind the creation of any quasi-judicial administrative body is to provide consistent, expeditious review without the difficulties that attend full trial. Moreover, it benefits all concerned to have experts consider questions of professional practice, especially in areas in which the courts are not particularly skilled. *See* J. Landis, *The Administrative Process* 30–37 (1938). While the latter is at best marginally applicable here—questions of fraud over real property transactions are quintessentially judicial—the former is significant. Creating parallel review systems for real estate brokers would only add to the expense of regulation. In addition, it would create the potential for conflicting standards of review, which could lead to venue-shopping. These would sap administrative review of its virtues.

Few benefits would arise from a private right of action. Since the Commonwealth Court retains general powers of review over Commission activities, as it does for any Commonwealth administrative body, the need for some judicial supervision has been provided for. 2 Pa.Cons.Stat. Ann. §§ 701–04 (Purdon Supp.1989) (judicial review of Commonwealth agency action); *see also Shober v. Commonwealth,* 62 Pa. Commw. 110, 435 A.2d 284 (1981) (scope of review of Real Estate Commission activities). Besides, as noted above, the statute does not provide for compensatory damages. Instead, it allows the Commission to impose modest fines and severe non-monetary penalties, the latter even encompassing license revocation. If the legislature wanted to encourage a private cause of action, it would surely have created greater incentives for private parties to act. *Cf. Sawyer Realty Group, Inc. v. Jarvis Corp.,* 89 Ill.2d 379, 59 Ill.Dec. 905, 909–10, 432 N.E.2d 849, 853–54 (1982) (creation of express private remedy in comprehensive real estate broker regulatory scheme basis for upholding private cause of action). The legislative purpose, as expressed in the legislation itself, makes a private cause of action inconsistent with the legislative scheme. The third factor thus weighs against the plaintiff.

The three *Cort* factors, taken in sum, point away from any private cause of action. This is consistent with Pennsylvania statutes and case law. As noted earlier, the Statutory Construction Act requires that penal statutes be construed narrowly. Another provision of this statute adds that statutory remedies, where adequate, are to be exclusive. 1 Pa.Cons.Stat. Ann. § 1504 (Purdon Supp.1989); *see also Lashe v. Northern York County School Dist.,* 52 Pa.Commw. 541, 417 A.2d 260 (1980). This suggests that courts are to be chary when they consider creating private causes of action.

In addition, the state courts that have considered whether private causes of action may be pursued under similar real estate licensing statutes have ruled that they cannot. *Kimball Bridge Road v. Everest Realty Corp.,* 141 Ga.App. 835, 234 S.E.2d 673 (1977); *Wick Realty, Inc. v. Napili*

*Sands Maui Corp.*, 1 Haw.App. 448, 620 P.2d 750 (1980). Courts that have ruled otherwise have done so on distinguishable statutes. In *Sawyer Realty*, the Illinois statute explicitly allowed for limited compensatory damages payable to private parties. 59 Ill.Dec. at 909, 432 N.E.2d at 853.-[12] Likewise, the court in *General Mut. Ins. Co. v. Pledger*, 280 Ala. 400, 194 So.2d 557 (1967) (per curiam), construed a statutory provision mandating that realtors and brokers be bonded, with the state as beneficiary. This is readily distinguishable, because a bonding statute is intended to protect all who deal with the bonded individual against defalcation or fraud. The law of other states thus supports this court's finding.

There is thus no basis for this court to imply a private cause of action from this statute. The legislature knew how to create such causes of action; indeed, this statute contains a provision under which those defrauded by insolvent realtors can recover from a fund comprising the real estate license renewal fees due under the statute. 63 Pa.Stat. Ann. § 455.803 (Purdon Supp. 1989); *see also Causer v. Mandarino*, 338 Pa.Super. 564, 488 A.2d 36 (1985). Since the legislature committed the enforcement of this statute to an administrative body, it is not within this court's province to move it elsewhere. As old a maxim as *expressio unius est exclusio alterius*, adhered to by Pennsylvania courts, is not to be countermanded save by a clear demonstration of legislative intent. *Commonwealth ex rel. Maurer v. Witkin*, 344 Pa. 191, 196, 25 A.2d 317, 319 (1942) (follows maxim); *Commonwealth v. DeFusco*, 378 Pa.Super. 442, 446, 549 A.2d 140, 141–42 (1988) (same), *appeal granted*, —— Pa. ——, 559 A.2d 34

(1989); *see also National Ry. Passenger Corp. v. National Ass'n of Ry. Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) (clear legislative intent prevails over canons of statutory construction).

### c. Qui Tam Action

■ Alternatively, Marra's attempt to enforce this statute, taking any penalties for himself, might be interpreted as a request that this court create a *qui tam* right of action for this statute. *Qui tam*[13] actions are actions brought on behalf of the government by a private party, who receives some part of the recovery awarded as compensation for his efforts.[14] *Chesapeake Bay Foundation v. Bethlehem Steel Corp.*, 608 F.Supp. 440, 449 (D.Md.1985). They, like private causes of action generally, assist the government by enlisting the aid of citizens in enforcing statutes. These actions, prominent at the time of the First Congress, have once again become important federally through the False Claims Act, 31 U.S.C.A. §§ 3729–31 (West Supp. 1989). *See* Krent, *Executive Control over Criminal Law Enforcement: Some Lessons from History*, 38 Am.U.L.Rev. 275, 296–303 (1989). This would seem to be exactly what the plaintiff desires, with the recovery flowing entirely to him. Unfortunately for him, long-settled law prevents this court from granting his wish.

First, federal courts have consistently held that *qui tam* actions do not exist at common law and thus can only be maintained under express or strongly implied statutory authority. *See, e.g., United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541, 63 S.Ct. 379, 382, 87 L.Ed. 443 (1943);

---

**12.** It may be noted that the Illinois legislature has nullified *Sawyer Realty* by barring all private causes of action under the statute. *Stefani v. Baird & Warner, Inc.*, 157 Ill.App.3d 167, 109 Ill.Dec. 444, 510 N.E.2d 65 (1987).

**13.** The phrase is an abbreviation of *qui tam pro domino rege, quam pro se ipso in hac parte sequitur* ("Who as well for the King as for himself sues in this matter."). 3 W. Blackstone, *Commentaries* *162 & n. 41 (W. Lewis ed. 1898); *see also Jacklovich v. Interlake, Inc.*, 458 F.2d 923, 923 n. 1 (7th Cir.1972).

**14.** *Qui tam* actions differ analytically from private causes of action. The latter are thought to protect personal interests granted by Congress, while the former advance general public interests. This is reflected in the absence for *qui tam* actions of those standing requirements that beset ordinary private causes of action. Caminker, *The Constitutionality of* Qui Tam *Actions*, 99 Yale L.J. 341, 345 (1989). Since the cause of action here has both private and public elements, either mode is arguably applicable.

*Sierra Club v. Andrus,* 610 F.2d 581, 591 n. 17 (9th Cir.1979), *rev'd on other grounds sub nom. California v. Sierra Club,* 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *United States ex rel. Burnette v. Driving Hawk,* 587 F.2d 23, 24 (8th Cir.1978); *Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81, 84 & n. 4 (2d Cir.1972); *Bass Anglers Sportsman's Soc'y v. U.S. Plywood–Champion Papers, Inc.,* 324 F.Supp. 302, 306 (S.D. Tex.1971); *see also Clauchs v. Pittsburg,* 31 Pa.Super. 331, 334 (1906).[15] The old common-law choses in action—detinue, trespass, trover, and the like—uniformly advanced the claims of one private party against another; the common law did not apply to the monarch. R. Millar, *Civil Procedure of the Trial Court in Historical Perspective* 32 (1952); J. Vining, *Legal Identity* 22 (1978). Consequently, the *qui tam* action, invoking the power of the sovereign, would simply be irrelevant.

Second, even statutory language that seems to grant a *qui tam* action will not be held to do so if other language places enforcement in the hands of governmental authorities. *See, e.g., Bass Angler Sportsman Soc'y v. United States Steel Corp.,* 324 F.Supp. 412, 415 (N.D.Ala.1971), *aff'd sub nom. Bass Anglers Sportsman Soc'y v. Koppers Corp.,* 447 F.2d 1304 (5th Cir. 1971). Like implied private causes of action, *qui tam* actions are hence to be invoked sparingly. This is so because *qui tam* actions are intended to enforce "the fundamental constitution of government, to which every man is a contracting party." 3 W. Blackstone, *Commentaries* \*160. Such a contract allows the sovereign, acting

through the monarch-in-Parliament or the popularly-elected legislature, to place enforcement of a policy in whatever hands it chooses. These policies are themselves almost uniformly effected by legislation or regulation. As Justice Frankfurter put it, "[i]n such situations society makes individuals the representatives of the public for the purpose of enforcing a policy explicitly formulated by legislation." *Priebe & Sons, Inc. v. United States,* 332 U.S. 407, 418, 68 S.Ct. 123, 129, 92 L.Ed. 32 (1947) (Frankfurter, J., dissenting). Since the *qui tam* action requires the delegation of some sovereign attributes, it is logical that some clear statutory indication be required before they be delegated.

There is also an important prudential reason behind this narrow construction. *Qui tam* actions have long been looked at askance because of the potential for collusive litigation that would estop the government from more effective prosecution. 3 W. Blackstone, *Commentaries* \*160. While modern *qui tam* statutes provide for governmental intervention in private actions, *see* False Claims Act, 31 U.S.C.A. §§ 3729–31 (West Supp.1989), this would not necessarily be so without an explicit statement. After all, the government is by definition not an indispensable party to an action brought *qui tam.*[16] Since the *qui tam* action clothes individuals with governmental authority, with the *res judicata* effects that the exercise of such authority can entail, individuals may exercise it only by virtue of positive law. The judiciary, fundamentally a countermajoritarian enterprise, may not properly impair the legislature's choice of enforcer in the absence of a

---

**15.** Pennsylvania courts have only infrequently considered *qui tam* actions; indeed, such actions have been all but absent for the last century. When *qui tam* actions have been filed, they have been filed under a statutory provision. *See, e.g., Curtin v. Nittany Valley Ry. Co.,* 135 Pa. 20, 19 A. 740 (1890); *Blessington v. Commonwealth,* 14 A. 416, 10 Sadler 509 (1888); *Cake v. Jacoby,* 2 Weekly Notes of Cases 391 (Pa.1875); *Megargell v. Hazleton Coal Co.,* 8 Watts & Serg. 342, 346 (1845). Indeed, one early case held that an informer could only bring an action under a statute to recover a penalty if the statute expressly gave him at least part of the penalty. *Fraily v. Sparks,* 2 Parson's Select Equity

Cases 232, 235 (Phila.C.P.1848). The 150–year-old decision of a puisne court is at best an uncertain guide as to the conclusion of a modern Pennsylvania court, though, and so this court shall consider more vital cases from other jurisdictions.

**16.** There is also a general question about whether private causes of action lead to misuse of social resources and inconsistent enforcement. *See* Caminker, 99 Yale L.J. at 344 & n. 14. This would be yet another reason not to imply a *qui tam* action without very clear implications from the legislature that one was intended.

constitutional mandate. Consequently, both precedent and history militate against a judicially-created *qui tam* action.

Even if these were to be put to one side, and this court were to decide whether a *qui tam* action should be implied from the statute as it would an implied right of action, this court would not create one. As noted above, under Pennsylvania law, penal statutes are to be construed strictly. 1 Pa. Cons.Stat. Ann. § 1928(b)(1) (Purdon Supp. 1989); *see also Leach v. State Real Estate Comm'n*, 25 Pa.Commw. 474, 360 A.2d 269 (1976) (predecessor statute penal). This court must thus determine whether this provision in particular is penal to decide how broadly it should be construed; to the extent that it is remedial, it must be construed broadly. 1 Pa.Cons.Stat. Ann. § 1928(c) (Purdon Supp.1989); *see also Commonwealth ex rel. Creamer v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974) (different parts of statute may be construed differently).

The classical test on whether a law is remedial or punitive was stated in *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892). The Court put it thus: "The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual ..." 146 U.S. at 668, 13 S.Ct. at 228. The wrong here is ambiguous. It is private insofar as it concerns dealings between private parties. However, the pervasive regulatory scheme gives the Commonwealth, and through it the people, a general interest in maintaining proper standards of dealing in real estate. It is thus necessary to turn to the more specific standards set forth by more recent courts.

Generally, modern courts look at the remedies to determine whether a statute is remedial or punitive. If the remedies are essentially compensatory (including the cost of prosecuting an action), then the statute is deemed remedial; if, on the other hand, they exceed greatly the actual damages or are imposed without regard to the actual damages, then they are punitive. As the Court put it recently, "a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goal of punishment." *United States v. Halper*, —— U.S. ——, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989). Thus, in an early case, the Court held that a statutorily-fixed penalty apportioned equally between the United States and an informer was penal because it bore no relation to the actual damages. *Bolles v. Outing Co.*, 175 U.S. 262, 264–65, 20 S.Ct. 94, 95, 44 L.Ed. 156 (1899) (copyright infringement); *see also Filmon Process Corp. v. Spell–Right Corp.*, 404 F.2d 1351, 1355 (D.C.Cir.1968) (patent *qui tam* action with fixed fines penal); *Lyons v. Westinghouse Elec. Corp.*, 222 F.2d 184, 189 (2d Cir.1955) (L. Hand, J.) (antitrust action; all damages over actual are punitive); *Commonwealth v. Musser Forests, Inc.*, 394 Pa. 205, 211–13, 146 A.2d 714 (1958) (where treble damages based on sale price of Commonwealth trees destroyed compensated only for other benefits of trees, damages not penal).

Here, the potential fines are modest, but they are not explicitly compensatory (especially since they inure to the Commonwealth). Since fines may be used entirely as punishments, the statute is, for this purpose, penal and therefore must be construed strictly. Creating a private means of enforcement that captures whatever fines the Commonwealth would normally recover would scarcely qualify as strict construction. Just as for implied causes of action, when a statute sets up a body as its enforcer, it is strong evidence that private suit is precluded. *See, e.g., Connecticut Action Now*, 457 F.2d at 85. This presupposition, combined with the strict interpretation we must apply and the strong bias against inexplicit *qui tam* actions found in law and history, compels this court to decline Marra's implied invitation to create a *qui tam* action from whole cloth. If the legislature had wanted to permit the recovery of damages under the statute, it could surely have said so. *Cf. Larsen v. Philadelphia Newspapers, Inc.*, 375 Pa.Super. 66, 77, 543 A.2d 1181, 1186 (1988) (no private recovery for violation of confidentiality agreement in administrative proceeding).

The statute thus contains no indication that the legislature sought to empower citizens to act as "private Attorneys General," aiding the Commonwealth in enforcing this statute. *Cf. Associated Indus., Inc. v. Ickes*, 134 F.2d 694, 704 (2d Cir.) (origin of phrase), *vacated as moot*, 320 U.S. 707, 64 S.Ct. 74, 88 L.Ed. 414 (1943). Accordingly, Count III of the complaint—including, most importantly, paragraph twenty-two—must be dismissed for failure to state a claim upon which relief can be granted. Marra, if aggrieved, may seek whatever vicarious satisfaction he can by filing a complaint with the Real Estate Board.

## III. CONCLUSION

All of Marra's complaint save paragraph twenty-two is therefore dismissed under Rule 12(b)(7) because of failure to join an indispensable party (Lawrence Marra, Jr.), the joining of whom would destroy complete diversity. The remaining paragraph is dismissed under Rule 12(b)(6) because the statute under which Marra sues does not create a private cause of action. This would also compel dismissal of the rest of Count III. Counts I and II would likewise be dismissed under Rule 12(b)(6) because of pleading insufficiencies.

Since Burgdorf has not filed an answer, Marra may, under Rule 15(a), apply for leave to amend. It is a tenet of our rules of procedure that amendments to complaints are to be allowed with the utmost liberality, particularly where, as here, the complaint has not formally been answered. Since a motion to dismiss does not constitute an answer, Marra retains his right to amend. *See, e.g., Kelly v. Delaware River Joint Comm'n*, 187 F.2d 93, 94 (3d Cir. 1951); 3 J. Moore, *Moore's Federal Procedure* ¶ 15.07[2] (2d ed. 1989) This court would have allowed Marra to amend his complaint before dismissing, were his claims not barred under Rule 12(b)(7). Since the claims are barred, however, no such amendment need be permitted before dismissal. Though amendment is to be allowed freely, it will not be allowed unless it remedies the deficiencies of the original complaint. 3 J. Moore, *Moore's Federal Procedure* ¶ 15.10 (2d ed. 1989). Given the

law of the case, this would likely be difficult. Nevertheless, Marra is entitled to try.

An order follows.