538 A.2d 76

Commonwealth of Pennsylvania, Acting by Attorney General LeRoy S. Zimmerman, Plaintiff *v.* Society of the 28th Division, A.E.F., Corp., and John L. Arnold, Robert Kowaleski and Charles W. Sheriff, Defendants.

Heard July 27, 1987, before Senior Judge BUCHER.

*John J. Calabro,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for plaintiff.

*Joel Weisberg,* with him, *Lacy Hayes, Jr.,* for defendant, John Arnold.

OPINION BY SENIOR JUDGE BUCHER, December 2, 1987:

This is an action pursuant to this Court's original jurisdiction requesting permanent injunctive relief against defendants, John L. Arnold and Charles W. Sheriff.

On October 8, 1986, plaintiff, Commonwealth of Pennsylvania (Commonwealth) acting by its Attorney General LeRoy S. Zimmerman, filed a complaint in equity and an application for preliminary injunction. Plaintiff alleges that defendants have engaged or are engaging in unfair methods of competition and unfair or deceptive acts or practices in violation of Section 3 of the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224 *as amended,* 73 P.S. §201-3. Defendants, Society of the 28th Division, A.E.F., Corp. (Society), John R. Arnold, Robert

Kowaleski and Charles Sheriff entered into consent petitions for preliminary injunction and this Court entered said petitions as orders of the Court on October 31, 1986.

On June 17, 1987, plaintiff filed a praecipe to list the matter for hearing on plaintiff's complaint for permanent injunction. On June 23, 1987, this Court approved and entered as Orders the consent petitions for permanent injunction entered into by defendants, Society and Robert Kowaleski and the Commonwealth.

A hearing on the complaint for permanent injunction as to the remaining defendants, John L. Arnold and Charles W. Sheriff was held on July 27, 1987. Upon consideration of the evidence presented at trial and after reviewing the posttrial briefs submitted by counsel, we hereby make the following findings of fact:

1. The plaintiff is the Commonwealth of Pennsylvania acting by Attorney General LeRoy S. Zimmerman, through the Philadelphia Office of the Bureau of Consumer Protection;

2. Defendant John Arnold (Arnold) is an adult individual engaged in trade and commerce within the Commonwealth through the solicitation of money from a principal place of business located at 4213 "B" King George Drive, Harrisburg, Dauphin County, Pennsylvania, (P5 of Arnold's Answer)

3. Defendant Charles Sheriff (Sheriff) is an adult individual engaged in trade and commerce within the Commonwealth through the solicitation of money on behalf of Society from a principal place of business located at 2440 Parkway Blvd., Penbrook, Dauphin County, Pennsylvania; (P7 of Sheriff's Answer)

4. Defendant Society of the 28th Division A.E.F. is a Pennsylvania non-profit corporation with no permanent office or place of business; (P4 of Society's Answer)

5. Society is composed of veterans of the 28th Division, A.E.F. who have served in the armed services whose purpose is to provide services and assistance to its members; (P8 of Society's Answer)

6. Society has entered into and on June 23, 1987, this Honorable Court approved a Consent Petition for Permanent Injunction wherein Society has agreed to affirmatively disclose the following:

a. The solicitation is being conducted by a "paid solicitor" if such is the case;

b. The dollar amount of gross contributions which will be forwarded to the Society;

7. Defendant Robert Kowaleski (Kowaleski) is an adult individual engaged in trade and commerce within the Commonwealth through the solicitation of money on behalf of Society from a principal place of business located at 2200 West Chester Pike, Suite B-9, Broomall, Delaware County, Pennsylvania;

8. Kowaleski entered into, and on June 23, 1987 this Court approved, a consent petition for permanent injunction wherein he agreed to disclose the following:

a. The solicitation is being conducted by a "paid solicitor";

b. The dollar amount or percentage of gross contributions which will be forwarded to the organization on whose behalf he solicits;

9. Society, in order to raise funds, enters into yearly contracts with Arnold to solicit funds on behalf of Society; (P9 of Society's and Arnold's Answers)

10. Said contracts provide as follows:

a. In exchange for Arnold's right to solicit on behalf of Society, Arnold must pay an annual fee of $3,000 to the Society plus the cost of printing the Society's Convention Book; (P11 of Arnold's Answer, N.T. 28-29)

b. The funds received by Society from Arnold are to be used for internal expenses and not for charitable purposes; (P15-C of Arnold's Answer)

c. Arnold is to open a bank account carried under the name of Society into which he is to deposit all funds collected.

11. Prior to and at the time of the filing of the Commonwealth's Complaint in Equity, Arnold, pursuant to contract, solicited money on behalf of Society; (P5 of Arnold's Answer)

12. Subsequent to the filing of the Commonwealth's Complaint in Equity, Society advised Arnold that his solicitation contract had been terminated; (P5 of Arnold's Answer)

13. Sheriff, pursuant to an agreement with Arnold, solicits funds on behalf of Society; (P10 of Arnold's and Sheriff's Answer)

14. Sheriff and Arnold (defendants) contact citizens of the Commonwealth and request that they purchase advertisements in Society's annual Convention Book; (Stipulation of Sheriff, P-Ex.1 and Stipulation of Arnold, P-Ex.2)

15. During said solicitations, defendants do not disclose to prospective purchasers of advertisements the percentage or dollar amount which is forwarded to Society or the percentage or dollar amount which is retained by defendants; (Stipulation of Sheriff, P-Ex.1 and Stipulation of Arnold, P-Ex.2)

16. Consumers who are solicited are informed, *inter alia*, as follows:

a. The individual called has contributed to the Society previously and that his/her help would be appreciated again; (N.T. 4-5, October 27, 1976 hearing)

b. Contributors' names will appear in Society's annual Convention Book; (N.T. 14, 21).

c. That the caller is from the Society; (N.T. 4, October 27, 1986 hearing and N.T. 26)

17. While each of the business owners testifying indicated that he had contributed to the Society prior to

1986, (N.T. 15, 20, 23) the Commonwealth presented witnesses at the hearings who testified, and we so find, that:

a. Consumers are contacted who have never contributed to the Society previously; (N.T. 4, 5, 8, October 27, 1986 hearing)

b. The names of the individuals who contribute do not appear in Society's Convention Book; (N.T. 34, 35)

c. Defendant Arnold is not a member of the Society; (N.T. 30)

18. Only $3,000 of the total money collected by Arnold and Sheriff plus the printing cost is ever forwarded to the Society; (P15-C or Arnold's Answer)

19. The printing cost of Society's 1986 Convention Book paid by Arnold was $1,263; (N.T. 33)

20. Upon giving a telephone pledge, consumers receive a remittance invoice in the amount of the contribution. (P16 of Arnold's Answer)

21. Said remittance invoice represents that the telephone number of the Society is 717-545-8172; (P17 of Arnold's Answer)

22. Karen McKeown, an agent for the Commonwealth's Bureau of Consumer Protection, testified, and we so find, that when she called 717-545-8172, the number listed on the Society's remittance invoice, she was informed:

a. That she had reached John Arnold, the president of the Society; (N.T. 36)

b. That monies collected went to orphan members of the Pennsylvania National Guard with whom they [Society] were associated; (9 N.T. 37)

23. Robert Laskowski, the national commander and custodian of records for the Society testified, and we so find, that:

a. Arnold is neither a member of the Society nor its president (N.T. 30)

b. The Society is not affiliated with the Pennsylvania National Guard. (N.T. 30)

24. The telephone number 717-545-8172 is listed to the personal residence of Arnold; (P19 of Arnold's Answer)

25. Society's 1986 annual convention was June 23 through 28 of said year; (N.T. 27)

26. In the twelve months preceding the Society's 1986 annual convention, in excess of $40,000 was collected and deposited into Account No. 106-832-959-8 at Fulton Bank; (Stipulation of Arnold, P-Ex.2)

27. Said account is carried under the name of the Society and the sole signator thereto is Arnold; (Stipulation of Arnold, P-Ex.2)

28. Of said $40,000 the fixed annual fee of $3,000 plus printing cost of $1,263 was remitted to Society; (P18, 19 *supra*)

29. Consumers believed the money they were contributing would benefit the Society; (N.T. 17, 20, 24)

30. Consumers were not advised they were being contacted by a paid solicitor; (N.T. 14, 18, 25)

31. Consumers were not advised of the percentage or dollar amount which would benefit the Society; (N.T. 6, 9, October 27, 1986 hearing and N.T. 15, 19, 24)

32. Mr. Leroy Leber contributed to fifty different ad books in the last year and was never told either that a caller was a paid solicitor, or what percentage of the funds would be used by the organization. (N.T. 25)

33. Consumers testified, and we so find, that if they had been advised of the percentage or dollar amount which would benefit the Society, they would not have contributed to the Society through defendants; (N.T. 6, 8, October 27, 1986 hearing and N.T. 17, 19-20, 24)

## Discussion

We hold that plaintiff has met its burden for the grant of a permanent injunction by establishing that defendants have engaged in acts or practices violative of Section 3 of the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224 *as amended,* 73 P.S. §201-3. Section 2 of the Act, 73 P.S. §201-2(4), defines unfair methods of competition and unfair or deceptive acts or practices as including the following:

(i) Passing goods or services as those of another;

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

(iv) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

The Commonwealth presented witnesses who testified that defendants represented themselves as members of the Society when in fact they were not members but paid solicitors; that defendants told consumers they had contributed in the past when in fact consumers had no recollection of or records reflecting past contributions to the Society; and that when defendant Arnold was asked where the monies collected went to, he said they went to orphan members of the Pennsylvania National Guard when in fact the Society is in no way affiliated with that organization. Clearly, these representations

alone place defendants' acts and practices within the aforementioned prohibitions of the Act.

In addition, plaintiff contends that defendants, as paid solicitors, have violated the Act by failing to make affirmative disclosures to each prospective contributor as to the dollar amount or percentage of gross contributions that the Society will receive and the amount or percentage that will be retained by the paid solicitor. Defendants argue that such affirmative disclosures are not required and failure to make such disclosures does not constitute a violation of the Act. We disagree.

Our Supreme Court, in reviewing unfair and deceptive practices under the Act, has directed that the Act be construed liberally to effect its objective of protecting Consumers of this Commonwealth, *see, Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974). In the case at bar, defendant Arnold admitted that in exchange for the right to solicit on behalf of the Society, Arnold agreed to pay the Society $3,000 plus the costs of printing the ad booklet. The Commonwealth alleges that over $40,000 was collected as a result of solicitations for the Society's 1986 ad book as evidence by that sum being deposited in an account maintained by defendant Arnold and the Society (P-Ex.2). In response, defendants contend that there is no evidence to substantiate plaintiff's claim that the account was used solely for funds collected by defendants as paid solicitors for the Society. We find that it is reasonable for this Court to infer that the monies maintained in the aforementioned account constituted contributions made to the Society by consumers who were unaware that only $3,000 plus printing costs actually went to the Society. In *Bixler v. Hoverter*, 89 Pa. Commonwealth Ct. 88, 91, 491 A.2d 958, 959 (1985), this Court stated:

> An inference, . . . is simply a clear, logical, reasonable and natural conclusion which the trier of

fact may embrace or reject based on the evidence in the case. Commonwealth v. Shaffer, 447 Pa. 91, 288 A.2d 727 (1972)

We are satisfied that it is "more likely than not" that the monies held in the account maintained in the name of the Society and Arnold, were generated by solicitations made on behalf of the Society.

In light of the liberal construction to be afforded the Act along with witnesses' testimony that had they known only $3,000 of the money collected would go to the Society, they would not have contributed and it further appearing that defendants had collected approximately $40,000, we conclude that the purpose and intent of the Act, *i.e.*, to protect consumers from unfair and deceptive practices, would be best furthered by requiring defendants to affirmatively disclose either the dollar amount or the percentage of the contributions to be forwarded to the Society and the dollar amount or percentage to be retained by the paid solicitors.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction in this case pursuant to Sections 4 and 4.1 of the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224, as amended, 73 P.S. §201-1 *et seq*. (Consumer Act);

2. The fact that defendants retain approximately 90% of the funds received from the public is a material fact in that it goes to the heart of a contributor's decision making process;

3. Defendants have a legal duty to make an affirmative disclosure of this material fact given the totality of the circumstances;

4. Defendants have violated the Consumer Act by failing to disclose this material fact to prospective contributors;

466

5. Defendants have violated the Consumer Act by making the following misrepresentations:

a. That prospective contributors have previously provided support for the Society;

b. That contributor's name will appear in Society's annual convention book;

c. That solicitors are members of the Society;

d. That the telephone number of Society is 717-545-8172;

e. That Arnold is president of Society;

f. That monies collected go to orphaned children of members of the National Guard;

g. That the National Guard is associated with Society;

6. The acts and practices set forth above constitute unfair and deceptive acts or practices and other unlawful acts in violation of the Consumer Act, specifically Sections 201-2(4):

(i) Passing off goods or services as those of another;

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

(iv) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

(xvii) Engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding;

7. Defendants' conduct, statements and omissions set forth in the above paragraphs constitute willful use of a method, act or practice declared unlawful by Section 3 of the Consumer Act, 73 P.S. §201-3.

8. Defendants are personally liable for the aforesaid violations.

## ORDER

Now, December 2, 1987, upon consideration of plaintiff's complaint in equity and after a hearing and reviewing the entire record, it is hereby Ordered:

1. Defendants, John L. Arnold and Charles W. Sheriff, their agents and employees are permanently enjoined from:

(a) Misrepresenting directly or by implication the nature of their business, the recipient or beneficiaries of contributions or any other material fact;

(b) Failing to disclose as part of each solicitation the amount or percentage of the actual contributions received which will be directly forwarded to the Society or any other organization or entity on whose behalf they solicit.

(c) Engaging in any other acts or practices violative of the Unfair Trade Practices and Consumer Protection Law.