COMMONWEALTH of Pennsylvania, D. Michael Fisher Attorney General, Plaintiff,

v.

Gene P. PERCUDANI, individually and d/b/a Raintree Homes, Inc., Raintree Land Corp., Inc., Chapel Creek Mortgage Banker, Inc., Chapel Creek Homes, Inc., Chapel Creek Land Co., Homes by Vintage, Inc., Coventry Homes, Inc., Chapel Creek Credit Counseling, Inc., Y Rent, Inc., Why Rent and Raintree Enterprises, Inc.; Gerard A. Powell, individually and d/b/a Chapel Creek Land Co., Inc., Y Rent, Inc. and Coventry Homes, Inc., and Dominick Stranieri, and Coastal Environmental, Inc., Defendants.

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2003.

Decided Feb. 27, 2004.

Reconsideration and Reargument En Banc Denied March 26, 2004.

As Amended on Motion for Reconsideration April 7, 2004.

James M. Sysko, Scranton, for plaintiff.

Lee Applebaum, Philadelphia, for defendant, D. Stranieri.

Ernest D. Preate, Jr., Scranton, for defendant, G. Percudani.

BEFORE: COHN, Judge, and LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Before the Court are preliminary objections filed on behalf of Gene P. Percudani (Percudani), Raintree Land Corporation, Inc., Chapel Creek Mortgage Banker, Inc., Chapel Creek Homes, Inc., Chapel Creek Land Company, Homes by Vintage, Inc., Coventry Homes, Inc., Chapel Creek Credit Counseling, Inc., Y Rent, Inc., Why Rent and Raintree Enterprises (collectively, Raintree Defendants)[1] and Dominick

---

1. We strongly advise that all counsel file appearances indicating their respective clients. With the exception of counsel for Stranieri, no other appearance has been filed. Given the number of Defendants in the action, it is difficult for this Court to identify counsel and his clients. For example, Attorney Ernest D. Preate filed preliminary objections on behalf of Percudani. Attorney Preate's brief in support of preliminary objections is entitled "**De-fendants'** Brief in Support of **Their** Preliminary Objections and is signed by Attorney Preate as "Attorney for Plaintiff." Therefore, it is unclear whether Attorney Preate represents only Percudani or Percudani's corporate businesses as well. Additionally, Attorney

Marshall E. Anders filed preliminary objections and a brief in support thereof on behalf of Defendants Raintree Homes, Raintree Land Corp., Chapel Creek Mortgage Banker, Chapel Creek Homes, Chapel Creek Land, Homes by Vintage, Chapel Creek Credit Counseling, Why Rent and Raintree Enterprises. If Attorney Anders represents those Defendants consisting of Percudani's corporate businesses, then missing from this list is Coventry Homes and Y–Rent. Moreover, it is not clear whether the preliminary objections filed on behalf of Raintree are to include those business entities which are affiliated with Defendant Gerard A. Powell. There

Stranieri (Stranieri) to a complaint in equity filed by the Commonwealth of Pennsylvania, D. Michael Fisher, Attorney General (Commonwealth), alleging that all Defendants violated the Unfair Trade Practices and Consumer Protection Law (Law).[2]

On October 11, 2002, the Commonwealth filed a complaint in equity, alleging that various activities of Defendants were in violation of the Law. Specifically, the Commonwealth alleged that Defendants' actions during the construction, sale and mortgage of land and residential homes were in violation of Sections 2(4)(i), (ii), (iii), (iv), (v), (vii), (ix), (xi), (xiv), (xviii) and (xxi) of the Law.[3] The complaint seeks, *inter alia*, a declaration that Defendants are in violation of the Law, an order enjoining Defendants from participating in such conduct and an order requiring Defendants to make restitution to the affected consumers. On January 23, 2003, Defendant Coastal Environment filed preliminary objections, which were sustained in part and overruled in part by order of this Court dated May 27, 2003. On April 1, 2003, Stranieri filed the instant preliminary objections, followed by Raintree's preliminary objections on April 8, 2003 and Percudani's preliminary objections on April 23, 2003.

■■■ When reviewing preliminary objections in cases filed in our original jurisdiction, we consider as true all well-pleaded facts that are material and relevant. *Pennsylvania Tpk. Comm'n v. Hafer*, 142 Pa.Cmwlth. 502, 597 A.2d 754 (1991). Preliminary objections should be sustained only when they are clear and free from doubt. *Zinc Corp. of Am. v. Dep't of Envtl. Res.*, 145 Pa.Cmwlth. 363, 603 A.2d 288 (1992), *aff'd*, 533 Pa. 319, 623 A.2d 321

have not been any pleadings filed on behalf of Powell.

2. Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201–1—201–9.3.

3. Sections 2(4)(i), (ii), (iii), (iv), (v), (vii), (xvii), (ix), (xi), (xvi) and (xxi) provide as follows:
  "**Unfair methods of competition**" and "**unfair or deceptive acts or practices**" means any one or more of the following:
  (i) Passing off goods or services as those of another;
  (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
  (iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
  (iv) Using deceptive representations or designations of geographic origin in connection with goods or services;
  (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
  . . . .

  (vii) Representing that goods or services are of a particular standard, quality or grade, or that the goods are of a particular style or model, if they are of another;
  . . . .
  (ix) Advertising goods or services with intent not to sell them as advertised;
  . . . .
  (xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
  . . . .
  (xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;
  . . . .
  (xviii) Using a contract, form or any other document related to a consumer transaction which contains a confessed judgment clause that waives the consumer's right to assert a legal defense to an action;
  . . . .
  (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.
  73 P.S. §§ 201–2(4)(i),(ii), (iii), (iv), (v), (vii), (ix), (xi), (xiv), (xviii) and (xxi).

(1993). Any doubt should be resolved against the moving party. *Id.*

We further note that it has been held that the Law should be liberally construed. *Commonwealth by Creamer v. Monumental Props.*, 459 Pa. 450, 329 A.2d 812 (1974); *Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642 (Pa.Super.1999). The purpose of the Law is to eliminate unfair or deceptive business practices. *Zimmerman v. Bell Tel. Co.*, 121 Pa.Cmwlth. 642, 551 A.2d 602 (1988).

### The Complaint

The 278–page, 1,957 paragraph complaint identifies each individual participant and each corporate business involved and alleges that Percudani and Powell acted as chief executive officer, secretary and/or treasurer of the various corporate entities. Stranieri is identified as real estate appraiser who performed the appraisals on those residential homes constructed by the various home construction companies.

In Count I of the complaint, entitled "Unfair and Deceptive Acts and Practices," the Commonwealth identifies over 100 consumers that entered into land purchase and construction agreements with the various companies. It is alleged that consumers entered into land purchase and construction agreements with Defendants whereupon the parties agreed that consumers would make a down payment toward the purchase of the land and construction of their homes. By way of addendum to the land purchase and construction agreements, the parties agreed that consumers would continue to make monthly payments to Defendants as down payments on their land/home packages, and in return, Defendants would pay consumers' rent.

The complaint further alleges that consumers' funds were not escrowed; rather, they were commingled with Defendants' other funds. Notwithstanding the agreement and addendums, Defendants used the monthly payments to pay consumers' rents. The full amount of the monthly payment was credited to the purchase agreements, despite the deduction for the rent payments. Additionally, Defendants gave consumers various credits toward settlement costs at closing.

Defendants' actions misled consumers as to the true nature of Defendants' program and further misled underwriters and lenders about consumers' financial resources. These "double credits" created a need for Defendants to recover the concession, which they did by way of inflated selling prices that were inconsistent with the Pocono region.

The Commonwealth alleges that Defendants' acts, omission, practices and methods of operation are in violation of Section 3 of the Law, 73 P.S. § 201–3 (pertaining to unlawful acts or practices; exclusion) and constitute unfair or deceptive acts or practices under Sections 2(4)(i), (ii), (iii), (v), (vii), (xi), and (xxi) of the Law.

Count II of the complaint, entitled "Violations of the [Law] with Regard to the Appraisal of Homes and Properties by [Stranieri] in Concert with Defendants Raintree Homes, Inc., Raintree Land Co., Inc., and Chapel Creek Mortgage Banker, Inc." alleges that Defendants Raintree Homes and Raintree Land would routinely engage Stranieri, a certified appraiser, to appraise the land and homes purchased by consumers.

Stranieri would regularly be provided with information and/or documents containing the land value component of consumers' transactions with Raintree Homes and Raintree Land and would simply incorporate those values into his appraisal without researching county records to establish the previous selling price of the land sold to consumers. A review of the county records would have revealed that the land parcels sold by Raintree Homes and Raintree Land for amounts ranging from $20,000 to $27,000 had been purchased by the Percudani Family for

amounts ranging between $1,250 and $12,000.

Stranieri's appraisals relied on blue prints, contracts and specification sheets, and he did not view or physically appraise the majority of the homes. He typically used a $65 per square foot construction cost to evaluate the cost and value of the project homes, which was grossly inflated for the types of homes generally built by Defendants.

Stranieri's appraisals misled consumers into believing that the value of their homes was far in excess of the objective market value. As a result of the inflated appraisals, several consumers defaulted on mortgages procured through Chapel Creek Mortgage Banker, which had been sold to Chase Manhattan Mortgage and then to the Federal Home Loan Mortgage Company.

The Commonwealth alleges that there is a significant disparity between Stranieri's appraised value and the property's actual market value and that Stranieri's inflated appraisals were done to disguise the inflated value scheme of the other Defendants.

As a result of Stranieri's actions, consumers suffered irreparable harm to the extent that their financial obligations far exceeded the value of the collateral securing that obligation. Consumers are unable to sell their homes because their mortgages far exceed the value of their homes and they cannot refinance their homes from other lending institutions because the loan-to-value ratio of their homes exceeds industry guidelines. Consumers have faced, now face, or likely will face foreclosure action as a result of their inability to satisfy their monthly mortgages.

The Commonwealth alleges that Defendants' acts, omissions, practices and methods of operation are in violation of Section 3 of the Law and constitute unfair or deceptive acts or practices under Sections 2(4)(ii), (v), (vii), and (xxi) of the Law.

Count III of the complaint, entitled "Violations of the [Law] Discouraging and Disparaging Consumer Use of Independent Legal Counsel by Defendants [Percudani and Raintree]," alleges that Defendants directed their advertising to first-time home buyers. Defendants deceived consumers into believing that they did not need the services of independent counsel and that the title insurance company would represent consumers' interests at closing. This practice of discouraging the use of independent legal counsel is an unfair trade or deceptive trade practice and Defendants engaged in this conduct to avoid detection.

The Commonwealth alleges that Defendants' acts, omissions, practices and methods of operation are in violation of Section 3 of the Law and constitute unfair or deceptive acts or practices under Sections 2(4)(iii), (vii), and (xxi) of the Law.

Count IV of the complaint, entitled "Violations of the [Law] by [Raintree Homes, Inc., Raintree Land], [Percudani] and Chapel Creek Mortgage Banker, Inc. with Regard to Representations Made to Consumers About the Magnitude of Property Tax Increases," alleges that during the course of negotiations, Defendants presented consumers with documents representing the actual and estimated costs of real estate property taxes. Consumers, who had participated in credit rehabilitation and savings programs, negotiated their land purchase and construction contracts based on the figures provided by Defendants.

During the course of negotiations, Defendants required consumers to sign an acknowledgment that the real estate taxes were subject to change due to reassessment. Regardless, the magnitude of the tax increases was not disclosed. Defen-

dants, who held themselves out to do business within the Pocono region for over 20 years, knew or should have known of the anticipated tax increases. Due to the increased taxes, consumers suffered delinquencies, bankruptcies and foreclosures.

The Commonwealth alleges that Defendants' acts, omissions, practices and methods of operation are in violation of Section 3 of the Law and constitute unfair or deceptive acts or practices under Sections 2(4)(v) and (xxi) of the Law.

Count V of the complaint, entitled "Violations of the [Law] by Violations of the Federal Truth–in–Lending Act[4] and Regulation Z,[5]" alleges that Raintree Homes had a website on the Internet that described its business operations and programs available to consumers for new home construction and financing. The website identified a $1,000 down payment to be made by consumers under the Why Rent program. Although identified as a down payment, the website failed to disclose the terms of repayment and the annual percentage rate as required by the Truth–in–Lending Act and Regulation Z. Consumers generally relied on the misleading advertisement that omitted crucial information. Violations of the Truth–in–Lending Act and Regulation Z are *per se* violations of the Law.

The Commonwealth alleges that Defendants' acts, omissions, practices and methods of operation are in violation of Section 3 of the Law and constitute unfair or deceptive acts or practices under Sections 2(4)(v) and (xxi) of the Law.

Count VI of the complaint, entitled "Violation of the [Law]—Bait and Switch" alleges that Raintree Homes advertised and otherwise solicited the public to purchase homes by claiming that there were numerous model homes from which to choose for a $1,000 down payment and $685 per month. None of the 172 consumers who complained purchased the home and financing package identified by Defendants' solicitations or advertisements.

Defendants consistently switched consumers to different home construction and financing packages that were significantly more costly to consumers and designed their advertising and solicitation programs to entice consumers with low down payment and monthly payment amounts. Through their actions, Defendants intended to offer home and finance programs more costly to consumers and more profitable to them. Defendants' intentions were further evident by the entry of an "acknowledgment sheet" where consumers were asked to acknowledge in writing that they were offered and declined the advertised special. Defendants deliberately planned to offer a home and financing program that initially attracted consumers while knowing, through marketing research, that consumers could easily be switched to more costly and elaborate homes.

The Commonwealth alleges that Defendants' acts, omissions, practices and methods of operation are in violation of Section 3 of the Law and constitute unfair or deceptive acts or practices under Sections 2(4)(ix) and (xxi) of the Law.

Count VII of the complaint, entitled "Violations of the [Law]—Use of a Confession of Judgment Clause by Defendants Raintree Homes, Inc., Raintree Land Co., Inc., Chapel Creek Mortgage Banker, Why Rent, [Percudani] and Coastal Environment, Inc." alleges that Defendants employed the use of a "liquidated damages

---

**4.** 15 U.S.C. §§ 1610–1693(r).

**5.** 12 C.F.R. §§ 226.1–226.36.

acknowledgment" containing a confession of judgment clause.

The Commonwealth has received 50 consumer complaints in which said liquidated damages acknowledgement utilizing the confession of judgment clause was included and utilized by Defendants in direct and specific violation of the Law and three other consumer complaints in which the liquidated damages acknowledgment utilizing the confession of judgment clause was used in general violation of the Law. Defendants' use of the liquidated damages acknowledgments containing confession of judgment clauses placed consumers in untenable negotiating positions inasmuch as any objections consumers may raise could result in the loss of tens of thousands of dollars.

The Commonwealth alleges that Defendants' acts, omissions, practices and methods of operation are in violation of Section 3 of the Law and constitute unfair or deceptive acts or practices under Sections 2(4) (xviii) and (xxi) of the Law.

Count VIII of the complaint, entitled "Violation of the [Law]—Switching Building Lots (Chapel Creek Co., Inc., Chapel Creek Homes, Inc., Raintree Homes, Inc)" alleges that consumers entered into various contracts to purchase land and for the construction of new homes. After choosing particular lots, Defendants informed consumers that lots could not be sold due to various reasons, including purported liens on the subject property, the property's failure to pass percolation tests, the consumers' delay in making their decisions, the lots were previously sold, the presence of wetlands on the property, Defendants did not own the subject property, clear title to the property could not be obtained and the lot could not be built.

Defendants offered consumers less desirable properties and they knew or should have known that the building lots they displayed and offered for sale were in fact not saleable due to the conditions stated above. Defendants then presented and warranted to consumers that the properties offered for sale were in fact suitable for building.

Although Defendants offered alternative sites, the unique character of each parcel of real estate made such an exchange offer questionable. Defendants had a duty to know the legal and/or geographical conditions impacting each parcel of land for sale. Consumers accepted the exchanged lots because they already made purchase commitments to Defendants.

The Commonwealth alleges that Defendants' acts, omissions, practices and methods of operation are in violation of Section 3 of the Law and constitute unfair or deceptive acts or practices under Sections 2(4)(ii),(v),(vii) and (xxi) of the Law.

Count IX of the complaint, entitled "Failure to [Perform] in a Workmanlike Manner Defendants Raintree Homes, Inc., Chapel Creek Homes, Inc., Homes by Vintage and Raintree Enterprises, Inc." alleges that Defendants constructed the new homes in a shoddy and unworkmanlike manner. Consumers complained to Defendants, but they have failed to correct the problems.

The Commonwealth alleges that Defendants' acts, omissions, practices and methods of operation are in violation of Section 3 of the Law and constitute unfair or deceptive acts or practices under Sections 2(4)(vii), (xiv) and (xxi) of the Law.

Count X of the complaint, entitled "Attempting to Exclude the Warranties of Habitability and Merchantability by Defendants Raintree Homes, Inc., Chapel Creek Homes, Inc., Homes by Vintage, Inc., *et al.*" alleges that Percudani and Raintree Homes have advertised to the public that anyone dissatisfied with home

*at closing* will have some homes "bought back" by Defendants.

Notwithstanding, customers could not access their homes under construction without the knowledge, permission or presence of Defendants. Defendants would not allow independent contractors to perform any work on the home under construction and in effect, consumers had little or no opportunity to inspect Defendants' work prior to closing, thereby rendering the guaranty meaningless.

Additionally, Percudani and Raintree would require consumers to sign a "guaranty acknowledgment" which states, in effect, that a home built to plans and specifications satisfies both the consumers and Defendants' guaranty. Said documents were intended to excuse Defendants from compliance with the warranties of habitability and merchantability. Defendants provided consumers with a "certificate of warranty coverage" from a third party insurance company thereby attempting to insulate themselves from responsibility. Attempts to circumvent the warranties are *per se* violations of the Law.

The Commonwealth alleges that Defendants' acts, omissions, practices and methods of operation are in violation of Section 3 of the Law and constitute unfair or deceptive acts or practices under Sections 2(4)(ii), (iii), (v), (xiv), and (xxi) of the Law.

Averring that Percudani and Powell personally benefited from these actions, and that all Defendants acted in a willful fashion, the Commonwealth seeks (1) a declaration that Defendants are in violation of the Law, the Truth–in–Lending Act and Regulation Z; (2) an order directing Defendants to make consumer restitution to identified consumers; (3) an order directing Defendants to make consumer restitution to consumers not yet identified that can demonstrate a claim against Defendants; (4) an order directing Defendants

to make consumer restitution to all consumers whose homes were overvalued through deceptive and inaccurate appraisals; (5) an order directing the reduction, reformation or modification of all mortgages that are demonstrated to be in excess of the fair and accurate appraisal or market value of the homes; (6) an order directing Defendants to make appropriate restitution to all consumers who have identifiable losses as a result of delinquency, foreclosures, "short sales" or transfer of deed in lieu of foreclosure; (7) an order directing Defendants to pay actual damages to all consumers affected by Defendants' conduct as allowed by the Truth–in–Lending Act; (8) an order directing Defendants to pay statutory damages allowed by the Truth–in–Lending Act; (9) an order directing Defendants to pay to the Commonwealth civil penalties of at least $1,000 per willful violation of the Law, or $1,813,000, whichever is greater; (10) an order enjoining Defendants from any further violations of the Law and directing forfeiture of Defendants' right to do business as new home builders or loan brokers/ mortgage lenders until such time as they can demonstrate that they have made adequate provisions for restitution to all consumers arising out of this action; (11) if necessary, appoint a receiver to determine and collect Defendants' assets and liquidate them to satisfy the Court's order; (12) grant the Commonwealth costs of investigating, filing and prosecuting this action; and (13) any other relief the Court deems necessary.

## PRELIMINARY OBJECTIONS

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction and Standing filed on behalf of Stranieri

On October 16, 2003, Stranieri filed a motion to dismiss the Commonwealth's complaint for lack of subject matter juris-

diction and standing. For the reasons that follow, we deny the motion.

Stranieri avers that in August 2002, the Commonwealth's Bureau of Professional and Occupational Affairs entered into a consent agreement and order (consent order) with Stranieri in an action before the State Board of Certified Real Estate Appraisers. By virtue of the consent order, Stranieri surrendered his residential real estate appraisal license and agreed not to seek reinstatement of it for a period of at least five years. Therefore, by the terms of the consent order, Stranieri is barred from performing or assisting in the performance of real estate appraisals.

Because the consent order was entered prior to the filing of the Commonwealth's complaint, Stranieri argues that the Commonwealth lacks standing to pursue the matter and that there is no subject matter jurisdiction. Stranieri relies specifically on Sections 4 and 8(b) of the Law, 73 P.S. § 201–4 and § 201–8(b), which provide generally that the Attorney General may bring an action in the name of the Commonwealth against any person who is believed to be *"using or is about to use"* any method, act or practice prohibited by Section 3 of the Law and that civil penalties may be sought in any action brought under Section 4.

Stranieri contends that the Legislature's use of the present tense limits the Commonwealth's ability to pursue violations of the Law to ongoing deceptive acts or practices. In essence, Stranieri claims that because he cannot perform appraisals by virtue of the consent order, which was entered prior to the filing of the Commonwealth's complaint, he cannot presently use or in the near future use allegedly deceptive acts or practices. Therefore, there is nothing that the Commonwealth can prohibit nor can he be held accountable for his past conduct. He argues that

the Law does not create a cause of action against those who cannot presently or in the future use deceptive acts or practices.

We disagree. Our research has uncovered several cases in which the Commonwealth had sought to enjoin future conduct based on past acts. *See Commonwealth by Zimmerman v. Nat'l Apt. Leasing Co.,* 102 Pa.Cmwlth. 623, 519 A.2d 1050 (1986) (where Commonwealth alleged that apartment leasing company wrongfully withheld security deposits, it was sufficient that Commonwealth believe that a violation of Law *occurred* in order to set forth cause of action against company); *see also Frishman v. Dep't of State, Bureau of Prof. and Occupational Affairs,* 140 Pa. Cmwlth. 455, 592 A.2d 1389 (1991) (where petitioner entered into a consent decree with Commonwealth in action arising under the Law and admitted to participating in vehicle odometer rollback scheme, State Board of Vehicle Manufacturers, Dealers and Salespersons was not precluded from revoking petitioner's salesperson's license or imposing civil penalty); *Commonwealth by Preate v. Pennsylvania Chiefs of Police Ass'n, Inc.,* 132 Pa.Cmwlth. 186, 572 A.2d 256 (1990) (Commonwealth's complaint alleged that association held itself out to be a charitable organization and solicited contributions for itself and other entities); *Northview Motors, Inc. v. Commonwealth by Zimmerman,* 128 Pa. Cmwlth. 54, 562 A.2d 977 (1989) (evidence was sufficient to support restitution award to consumers who were damaged by auto dealer that violated Law by misleading consumers about the price and quality of the vehicles); *Commonwealth by Zimmerman v. Society of the 28th Div., A.E.F. Corp.,* 113 Pa.Cmwlth. 456, 538 A.2d 76 (1987) (Commonwealth's petition alleged that Defendants *violated or were violating* Law by representing that they were members of charitable organizations when in

fact they were paid solicitors, by telling consumers that they had contributed to a charitable cause in the past when in fact consumers had not, and by telling consumer that monies collected were donated to a cause that was not affiliated with soliciting organization); *Commonwealth by Biester v. Luther Ford Sales, Inc.*, 60 Pa.Cmwlth. 123, 430 A.2d 1053 (1981) (action by Commonwealth against automobile seller for nondisclosure that vehicle *sold* was flood damaged was remanded for imposition of restitution and civil penalties consistent with the Law). Consequently, case law indicates that the Commonwealth may pursue violations of the Law based on past illegal activities.

In his reply brief, Stranieri cites *Eugene Dietzgen Co. v. FTC*, 142 F.2d 321 (7th Cir.1944), to suggest that since the consent order has stopped the allegedly unfair practice, the object of the Commonwealth's action, namely an injunction to prevent further violations of the Law, is unnecessary. Notwithstanding, the propriety of the actual issuance of an injunction against Stranieri is premature inasmuch as presently before the Court are Defendants' preliminary objections. Whether the Commonwealth is able to sustain its burden of proof and the appropriateness of any remedy imposed is a matter to be heard at another time.

Furthermore, if we adopted Stranieri's interpretation of Section 4 of Law and limited the Commonwealth's actions to on-going activities, the purpose of the Law would be frustrated. As even Stranieri points out, a party could simply avoid liability under the Law by discontinuing its actions even after proceedings are commenced and claim that the matter is moot. Such an interpretation would do little in the way of preventing unfair or deceptive acts or practices and compensating injured consumers. In ascertaining legislative in-

tent, we may consider the consequences of a particular interpretation and may presume that the legislature did not intend a result that is absurd or unreasonable. 1 Pa.C.S. § 1921(c) and § 1922; *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. McCabe*, 163 Pa. Cmwlth. 11, 644 A.2d 1270 (1993). To allow a party to avoid liability for its actions by merely discontinuing its conduct would render the penalty provisions of the Law meaningless in their application.

Accordingly, we deny Stranieri's motion to dismiss.

## II. Failure to Set Forth Causes of Action under the Law against Stranieri

### A. Counts I, III, IV, V, VI, VII, VIII, IX and X

■ Stranieri claims that the Commonwealth failed to state causes of action against him in Counts III, IV, VII, VIII, IX and X inasmuch as the headings of those counts, which list Defendants by name, expressly exclude Stranieri and the allegations contained within each count do not set forth any alleged illegal activities on Stranieri's part.

We have reviewed the complaint and agree with Stranieri that the allegations contained in Counts III, IV, VII, VIII, IX and X do not allege any illegal activity on his part. Although the Commonwealth contends that Stranieri's actions were a crucial part of the remaining Defendants' scheme, it admits that "the other counts of the complaint may not specifically identify a role played by [Stranieri] with regard to the allegations set forth in each count ..." Commonwealth's Brief at 6.

Additionally, although the headings of Counts I, V, and VI of the complaint do not specifically exclude Stranieri, a reading of these counts likewise indicates that the

conduct complained of is alleged to have been committed by Percudani, the Raintree Defendants and Powell. There are no allegations averring that Stranieri participated in or benefited from the commingling/overpriced homes scheme (Count I), violated the Truth–in–Lending Act and Regulation Z (Count V), or participated in or benefited from the bait and switch scheme (Count VI). While the conclusionary paragraphs of all counts claim that "Defendants" have engaged in prohibited conduct, we do not believe that each count, as a whole, is unclear or confusing as to which Defendants are alleged to have participated in the conduct complained of in that count. Therefore, Counts I, V and VI are likewise dismissed as against Stranieri.

### B. Count II

■ Stranieri alleges that the Commonwealth has failed to state a cause of action in Count II of its complaint, specifically with regard to alleged violations of Sections 2(4)(ii), (v), and (vii) of the Law. With regard to Section 2(4)(ii) (relating to causing likelihood of confusion or of misunderstanding as to the source, sponsorship or certification of goods or services), Stranieri suggests that this Section is limited to confusion regarding the person or entity standing behind a good or service and that allegations that an appraisal was done improperly does not go to the likelihood of confusion addressed by this Section. We disagree.

The Commonwealth's complaint alleges that Stranieri appraised the consumers' homes based on incomplete and inaccurate information provided by Defendants and without personally visiting the homes in question. If it is proven that Stranieri conducted the appraisals in this manner,

the Commonwealth may reasonably argue that Stranieri "certified"[6] that the homes were actually worth the selling price. Thus, it may be argued that his participation caused consumers to be confused and to misunderstand that he was not certifying the value of the homes as an impartial appraiser.

■ Stranieri further suggests that the Commonwealth cannot sustain a cause of action under Section 2(4)(v) of the Law (relating to representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation or connection that he does not have) because that Section addresses claims of false advertising. We agree.

Although the Commonwealth suggests that Section 2(4)(v) is not so limited in its interpretation, our research has failed to uncover, and the Commonwealth does not cite, any cases where a cause of action brought under this Section was applied to any other type of claim. The Superior Court, in *DiLucido v. Terminix Int'l, Inc.*, 450 Pa.Super. 393, 676 A.2d 1237 (1996), stated that a plaintiff, in order to maintain a cause of action under Section 2(4)(v), must establish that a defendant's advertisement is false, that it actually deceives or has a tendency to deceive a substantial segment of its audience and that the false advertisement is likely to make a difference in the purchasing decision. *See also Weinberg v. Sun Co. Inc.*, 740 A.2d 1152 (Pa.Super.1999), *aff'd in part and rev'd in part*, 565 Pa. 612, 777 A.2d 442 (2001). Given that the Commonwealth has failed to allege that Stranieri's actions amounted to false advertising, we must sustain the

---

6. Black's Law Dictionary defines the term "certify" as "[t]o authenticate or verify in writing" and "to attest as being true or as meeting certain criteria." BLACK'S LAW DICTIONARY 220 (7th Ed.1999).

preliminary objection as to those portions of Count II alleging a violation of Section 2(4)(v) of the Law.

■ Stranieri further claims that the Commonwealth cannot bring claims under Section 2(4)(ii) or (vii) (relating to representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are not)[7] of the Law because those sections are limited to violations involving goods or services, which does not include homes or real estate. However, in *Gabriel v. O'Hara*, 368 Pa.Super. 383, 534 A.2d 488 (1987), and its progeny, the Law has been extended to include the sale of homes and real estate. Therefore, Stranieri's preliminary objection in the nature of a demurrer is overruled.

Finally, Stranieri claims that the Commonwealth may not bring a claim under Section 2(4)(xxi) of the Law (relating to engaging in other fraudulent or deceptive conduct that creates a likelihood of confusion or of misunderstanding) because it has failed to allege that consumers relied upon, received, or even read Stranieri's appraisals when buying their homes or that there was a buyer-seller relationship between Stranieri and consumers.

We would agree with Stranieri's position if this action was brought under Section 9.2 of the Law, 73 P.S. § 201–9.2, which allows for private actions by any person "who purchases or leases goods or services primarily for personal, family or household purposes." However, it is the Commonwealth that is pursuing this matter under Section 4 of the Law, which allows it to proceed when it has reason to believe that the Law is being or was violated.

Accordingly, as to Stranieri, we dismiss Counts I, III, IV, V, VI, VII, VIII, IX and X. With regard to Count II, those claims arising under Section 2(4)(v) of the Law are likewise dismissed. Stranieri shall defend against those claims arising under Sections 2(4)(ii) and (xxi) of the Law.

### III. Failure to Set Forth Causes of Action under the Law against Raintree Defendants

Raintree maintains that the Commonwealth has failed to set forth causes of actions against it in Counts II, III, IV, V, VI, VIII, and X inasmuch as the Law is limited to violations involving goods and services, which does not encompass real estate. As previously noted, however, the courts of this Commonwealth have recognized that the sale of residential homes is within the purview of the Law. *Gabriel.*

■ Additionally, Raintree argues that the Commonwealth's complaint violates Pa. R.C.P. 1019(a), which requires that a complaint be stated in a concise and summary form. Specifically, Raintree claims that the complaint is too verbose and redundant; thus, the complaint should be stricken or amended. The purpose of the pleadings is to place a defendant on notice of the claims that he will have to defend. *City of New Castle v. Uzamere*, 829 A.2d 763 (Pa.Cmwlth.2003). "A complaint must give the defendants fair notice of the plaintiff's claims and a summary of the material facts that support those claims." *Id.* at 767–768.

We have reviewed the complaint in its entirety, and while we agree that it is rather lengthy, the Commonwealth has complied with Rule 1019(a) as nearly as possible given the large number of consumers allegedly affected by all Defen-

---

**7.** Stranieri also states that a claim cannot be brought under Section 2(4)(v) for the same reason; however, because we have previously dismissed this claim, we need not address it further.

dants' actions. It was necessary for the Commonwealth to identify each affected consumer and the manner in which they were allegedly injured by Defendants. Given that Defendants are alleged to have engaged in a pattern of conduct, a certain amount of redundancy is expected.

Accordingly, the preliminary objections filed by Raintree Defendants are overruled.

## IV. Failure to Comply with the Rules of Civil Procedure/Insufficiency of Pleadings of Claims against Percudani

### A. Failure to Comply with Rules of Civil Procedure

■ Percudani initially objects on the ground that the Commonwealth's complaint fails to conform to the Rules of Civil Procedure in that there should be separate counts for each Defendant rather than each count pertaining to multiple Defendants. He further complains that the allegations contain boilerplate, open-ended and vague allegations. With the exception of paragraph 1200, we disagree.

As previously stated, the complaint, when viewed in its entirety, is sufficient to inform Defendants of their participation in the allegedly illegal activities and is sufficient to allow them to prepare a defense to those allegations.

■ Notwithstanding, Paragraph 1200 alleges that Rosendo Gautier entered into a land purchase and construction agreement with Defendant Chapel Creek Enterprises. However, the caption contains no such Defendant and we cannot determine whether the subsequent allegations are directed toward Raintree Enterprises or Chapel Creek Homes. Therefore, the Commonwealth is directed to properly identify the Defendant to which the allegations are addressed.

As noted, the headings for each count identify the particular Defendants to which the count is addressed. If the individual Defendants are not listed in the headings, the body of the counts identifies Defendants and the actions alleged to have occurred. Although time consuming, a paragraph-by-paragraph review of the complaint allows each Defendant to identify those causes of actions against it and its alleged actions, thereby satisfying Pa. R.C.P. No. 1019.

■ However, with regard to Count IX (failure to perform in a workmanlike manner), several of the Commonwealth's allegations need amendment. Specifically:

1. Paragraph 1891 alleges that Sharon and Maryann Warburton complained that their home was not complete or in a satisfactory condition, yet there are no specific allegations as to what was incomplete or unsatisfactory.

2. Paragraph 1894 alleges that the home built for Mr. and Mrs. Kenneth Alston had plumbing and structural problems. This allegation is vague and does not provide Defendants with sufficient knowledge as to the alleged problems.

3. Paragraph 1900 alleges that Mr. and Mrs. Danny Ruiz experienced delays and difficulties during the construction process. The allegations do not expound on the delays or the manner in which the Ruizes were harmed.

4. Paragraph 1914 alleges that Mr. and Mrs. Charles Lanier repeatedly complained to Defendant Chapel Creek Homes that there were problems with the kitchen floor. The nature of those problems is not disclosed.

5. Paragraph 1937 alleges that Augustina Benoit complained to Raintree Homes about plumbing defects.

The nature of those plumbing defects is not disclosed.

Because the above-referenced paragraphs do not adequately inform Defendants of the actions that they must defend against, the Commonwealth shall amend those paragraphs to specifically identify the nature of Defendants' alleged conduct.

### B. Demurrer of Percudani, individually

■ Percudani complains that the causes of action set forth against him fail to set forth sufficient facts to allow the court to pierce the corporate veil and to hold him personally responsible. The complaint identifies Percudani as president, vice-president, secretary and/or treasurer of the construction companies and mortgage companies and alleges that he personally benefited from the activities of the various Defendants. Notwithstanding, the Commonwealth has acknowledged that it is not alleging that the corporate veil should be pierced. (Commonwealth's brief at 14) Thus, Percudani's demurrer is overruled.

### C. Demurrer to Counts I, VII, IX, and X

Percudani claims that Counts I, VII, IX, and X fail to state causes of action insofar as they invoke Section 2(4)(xxi), the catch-all provision of the Law, because the Commonwealth has failed to plead fraud with particularity. Similarly, Percudani alleges that the Commonwealth cannot pursue its claims under Section 2(4)(xviii) of the Law because the land purchase and construction contracts at issue did not contain illegal confession of judgment clauses. We denied these same demurrers presented by Coastal Environmental, Inc. and incorporate our decision disposing of them by reference. *See Commonwealth v. Percudani*, 825 A.2d 743 (Pa.Cmwlth.2003).

■ Percudani next avers that the Law is limited to violations involving goods and services, which does not encompass real estate. As already noted, Pennsylvania courts have allowed causes of action under the Law with regard to the purchase of real estate. *Gabriel.*

Finally, Percudani objects to the Commonwealth's complaint to the extent that several counts allege violations of Section 2(4)(v) pertaining to false advertising. We agree that Count I and II do not adequately state a claim for false advertising. The remaining counts either sufficiently state such a claim or do not invoke Section 2(4)(v) of the Law.

Therefore, based upon the foregoing, the motion to dismiss filed by Stranieri is DENIED. The preliminary objections filed on behalf of Stranieri are SUSTAINED IN PART. Counts I, III, IV, V, VI, VII, VIII, IX and X are hereby dismissed as against Stranieri. With regard to Count II, the allegation that Stranieri violated Section 2(4)(v) of the Law is stricken.

The preliminary objections filed on behalf of Raintree Defendants are OVERRULED.

The preliminary objections filed on behalf of Percudani are SUSTAINED IN PART and the Commonwealth shall have 30 days from the date of this order to amend paragraphs 1200, 1891, 1894, 1900, 1914 and 1937 of the complaint. Additionally, in Counts I and II, the alleged violation of Section (2)(v) of the Law shall be stricken with regard to Percudani. Percudani's remaining preliminary objections are OVERRULED.

### ORDER

AND NOW, this 27th day of February, 2004, for the reasons set forth in the foregoing opinion, the motion to dismiss filed by Stranieri is DENIED. The prelimi-

nary objections filed on behalf of Stranieri are SUSTAINED IN PART. Counts I, III, IV, V, VI, VII, VIII, IX and X are hereby dismissed as against Stranieri. With regard to Count II, the allegation that Stranieri violated Section 2(4)(v) of the Law is stricken.

The preliminary objections filed on behalf Raintree Defendants are OVERRULED.

The preliminary objections filed on behalf of Percudani are SUSTAINED IN PART and the Commonwealth shall have 30 days from the date of this order to amend paragraphs 1200, 1891, 1894, 1900, 1914 and 1937 of the complaint. Additionally, in Counts I and II, the alleged violation of Section (2)(v) of the Law shall be stricken with regard to Percudani. Percudani's remaining preliminary objections are OVERRULED.

DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. I would sustain the preliminary objections of Defendant Dominic Stranieri (Stranieri) because the Complaint does not state a cause of action against him under the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201-1—201-9.3 (UTPCPL).

The Attorney General asserts that Stranieri has appraised real properties at an inflated value [1] and seeks to establish that such conduct is an unfair trade practice in violation of the UTPCPL. The Attorney General seeks to restrain the future occur-

rence of this conduct by temporary or permanent injunction. However, the future occurrence of this conduct has already been restrained by the Real Estate Appraisers Certification Act, Act of July 10, 1990, P.L. 404, 63 P.S. §§ 457.1–457.19. It specifically prohibits a certified real estate appraiser from doing any appraisal tainted by dishonesty, negligence or incompetence, 63 P.S. §§ 457.11(a)(7) and (8). The injunction sought by the Attorney General would be meaningless in light of this specific statutory prohibition and because Stranieri has already surrendered his license.

By order dated August 15, 2002, the Commonwealth and Stranieri agreed to settle Stranieri's violations of the Real Estate Appraisers Certification Act by entry of a consent order for doing "seriously inflated" appraisals. Consent Order and Agreement, Bureau of Professional and Occupational Affairs, Docket No. 1082–70–02 (Consent Order), Fact No. 4(b). By that order, Stranieri surrendered his appraiser's license; may not reapply for a license for five years; and is indefinitely barred from assisting or engaging in the appraisal of real estate.[2] If Stranieri violates this order or the Real Estate Appraisers Certification Act in any other way, the Board is authorized to seek an injunction. 63 P.S. § 457.17.

The UTPCPL authorizes the Attorney General to institute an action to enjoin an unfair trade method, act or practice "[w]henever the Attorney General ... has reason to believe that any person *is using*

---

1. As noted by Stranieri, these appraisals were done for the banks financing the purchase of homes, not for homebuyers, who agreed to a purchase price *before* the appraisals were done.

2. Stranieri agreed to cease and desist from acting as a real estate appraiser or holding himself out as such. Although Stranieri may

apply for a new license in five years, it will be his burden in that application to prove that he "bears the requisite honesty, trustworthiness, integrity and competency to again be entrusted to transact the business of real estate appraising in this Commonwealth." Consent Order, Order No. 6(i)(1).

*or is about to use* " this practice. 73 P.S. § 201–4. The Attorney General asserts that this provision authorizes his action against Stranieri, who is out of the business of appraising real estate and will be for at least the next five years. Stated otherwise, the Attorney General sees no distinction between "has used" in the past,[3] "is using" in the present or "about to use" in the future. However, the only way to read the actual words of the UTPCPL is that past conduct that is no longer continuing cannot support a complaint.

The distinction between "has used," "is using" and "is about to use" has been given effect in precedent interpreting an unfair trade practice statute very similar to Pennsylvania's UTPCPL. In *State ex rel. McLeod v. Brown*, 278 S.C. 281, 294

S.E.2d 781 (1982), the defendants contended that the state attorney general could not pursue an action against them because they had voluntarily ceased the conduct cited in the complaint. The South Carolina Supreme Court rejected this defense because the unfair trade practice statute expressly authorized actions against a person who "has used" an unlawful practice. *Brown*, 294 S.E.2d at 782–783. Indeed, the South Carolina statute [4] authorized the state attorney general to seek civil penalties as well as injunctive relief for violations that had occurred in the past but had discontinued.[5]

In sum, the words "is using or is about to use" have a meaning separate from "has used." [6] We must enforce the actual lan-

**3.** This assumes, *arguendo*, that Stranieri's conduct alleged in the Complaint violates the UTPCPL.

**4.** The court looked to S.C.Code Ann. § 39–5–110(a), which permitted the imposition of civil penalties for violations of the statute. *Id.* at 783. Here, by contrast, the UTPCPL only authorizes civil penalties where an injunction issued under 73 P.S. § 201–4 has been violated.

**5.** In support of his statutory construction argument, Stranieri cites an unpublished Rhode Island appellate court opinion, holding that "has used" is not the equivalent of "is using or is about to use." In *State of Rhode Island, by and through Sheldon Whitehouse, Attorney General v. Lead Industries Assoc.*, 2001 WL 345830, at 9, 2001 R.I.Super. LEXIS 37 at 28–30 (R.I.Super. April 2, 2001), the court addressed the meaning of Rhode Island's unfair trade practice statute that permitted the state attorney general to seek a court order against a person who "is using, *has used*, or is about to use" an unfair trade practice. R.I. Gen. Laws § 6–13.1–5. Previously the statute had authorized action only against one who "is using or is about to use" the unlawful practice; by a 1970 amendment, the legislature added the words "has used." The Court concluded that the Attorney General could rely on this term "has used" to prosecute

claims for misconduct that occurred after, but not before, the 1970 amendment.

This Court does not permit our unpublished opinions to be used in *any* Court. The Rhode Island Superior Court does not permit its unpublished opinions to be presented to it, but it does not purport to limit their use in other courts. Nevertheless, we do not consider the Rhode Island holding as authority for this dissent, even for the limited purpose of persuasion not precedent.

**6.** The parties are in agreement that the UTPCPL is modeled on the Federal Trade Commission Act (FTC Act), 15 U.S.C. §§ 41–58. The FTC Act includes the language "has used," and, in this respect, FTC case law precedent has limited value to this controversy. Nevertheless, the FTC may not issue a cease and desist order to restrain a practice long discontinued and where there is no reason to believe it will be renewed. *Rodale Press, Inc. v. Federal Trade Commission*, 407 F.2d 1252 (D.C.Cir.1968); *Marlene's Inc. v. Federal Trade Commission*, 216 F.2d 556 (7th Cir.1954). The result is different where the defendant claims the right to renew the practice. *Stanley Laboratories v. Federal Trade Commission*, 138 F.2d 388 (9th Cir.1943).

The Attorney General may not issue cease and desist orders; however, he may seek injunctions from a court. The principles reviewed in the above-referenced cases have

guage used by the General Assembly in the UTPCPL, and we must not insert words that are not there under the principle *expressio unius est exclusio alterius.* The allegation that Stranieri may have engaged in an unfair trade practice in the past, but is no longer, cannot support an action under the UTPCPL. The Attorney General cannot aver that Stranieri "is using" or "is about to use" an unfair method of doing real estate appraisals. By virtue of the August 15, 2002, consent order, Stranieri is barred from doing *any* real estate appraisals, whether fair or unfair.

One has to question whether both the Attorney General and the Board may act on behalf of the Commonwealth against Stranieri for the identical conduct. Our precedent seems to provide that conduct regulated by a specific statute can also be regulated under the UTPCPL, unless it is specifically excluded from the UTPCPL.[7] *See, e.g., Commonwealth v. Watson & Hughey Co.,* 128 Pa.Cmwlth. 484, 563 A.2d 1276, 1283, n. 13 (1989). On the other hand, in *Commonwealth v. Ted Sopko Auto Sales,* 719 A.2d 1111, 1114 (Pa. Cmwlth.1998), we held that it would be an abuse of discretion to impose penalties for the same conduct under both UTPCPL and a regulatory statute, such as the Real Estate Appraisers Certification Act. Here, the Attorney General seeks a restraining order virtually identical to the administra-tive order issued by the Board to Stranieri.

The real value of the UTPCPL is that it addresses unregulated activities. Through the hearing on the restraining order authorized in Section 4 of the UTPCPL, a court considers the general prohibition against "unfair or deceptive acts" and gives it meaning in a specific commercial context. Here, the Attorney General seeks a hearing before this Court to establish that inflated appraisals are an unfair trade practice. However, this specific commercial activity has been addressed by the legislature in the Real Estate Appraisers Certification Act, which has already established the principle that inflated appraisals are unlawful. In effect, the Attorney General seeks an injunction to require Stranieri to obey the Real Estate Appraisers Certification Act. It is meaningless to order a person to obey a statute; the legislature has already made that demand. Further, Stranieri has surrendered his appraiser's license, paid a fine and agreed to get out of the business for a minimum of five years. What purpose will be served by an injunction restraining Stranieri from doing inflated appraisals? He cannot do any appraisals for at least five years and cannot do inflated appraisals forever (unless the Real Estate Appraisers Certification Act is repealed). Because the order sought by the Attorney General is duplicative[8] of that already imposed by the

---

even greater force where, as here, the narrow jurisdiction of equity is invoked. It is axiomatic that equity cannot be invoked where there exists an adequate and complete remedy at law. Pa. R.C.P. No. 1509(c).

**7.** This is not entirely consistent with our holdings in cases such as *Lashe v. Northern York County School District,* 52 Pa.Cmwlth. 541, 417 A.2d 260, 264 (1980), wherein we held that the subject matter of an administrative agency tribunal is exclusive unless the statute has preserved the jurisdiction of the courts. Here, the Real Estate Appraisers Certification Act has not preserved the jurisdiction of the courts to review inflated appraisals resulting from fraud or incompetence.

**8.** The Federal Trade Commission has by regulation, 16 C.F.R. § 4.6 (2004), committed itself to cooperate with other governmental agencies to prevent unnecessary duplication of regulatory functions. The Commonwealth would be well-served by such a policy. Allowing the Attorney General to proceed where there has already been an enforcement action taken by the agency charged with regulating appraisers creates the risk of inconsistent re-

Board, I believe it is barred even if the UTPCPL were to be construed to allow a complaint to proceed on the basis on past conduct alone as opposed to present conduct or conduct about to incur.

For these reasons, I would sustain the preliminary objections of Defendant Stranieri.

sults from the Board, on one hand, and the court on the other hand, considering the same conduct.